HEARD NOVEMBER TERM, 1876.

## MARS *vs.* CONNER.

Where, in an action to set aside a judicial sale of land on the ground of fraud, the validity of the sale is sustained, but the purchasers are required to account for the difference between the price they paid for the land and the enhanced price at which they had sold it, they (the purchasers) are not liable for rent.

A claim by open account for $250: *Held* not to be paid or satisfied by a promissory note for $150, it appearing that the note was not given as satisfaction, but merely as a substitute for the original claim and as a memorandum that the amount had been reduced to $150.

A petition entitled petition in a cause pending when it was filed. to which new parties were made and other relief demanded: *Held* to be practically an action for equitable relief.

In equity causes, or, more properly speaking, those actions in which the relief sought was, prior to the Code, obtained only in a Court of equity, costs are not allowed, of course, under §§ 330 and 331 of the Code, but may be allowed or not, in the discretion of the Court, as provided in § 332.

BEFORE COOKE, J., AT ABBEVILLE, OCTOBER, 1876.

The statement contained in the opinion of this Court is sufficient for a full understanding of all the points with reference to which the case is reported.

*Monteith & Bauskett*, for appellants.

*McGowan*, contra.

August 8, 1877.   The opinion of the Court was delivered by

McIVER, A. J.   For a proper understanding of the question presented by this appeal, it will be necessary to make a brief statement, not only of this, but other cases, with which it is closely connected.

On the 20th of August, 1866, William McCelvey being greatly embarrassed, and believing himself to be utterly insolvent, made a

voluntary assignment to the plaintiff, Mars, of his whole estate, in which were included two tracts of land, one known as the Wells tract and the other as the Clay tract, for the benefit of his creditors, and within a few days thereafter removed from the State. His right to the Clay tract was then in litigation, under a bill filed by Hugh McCelvey against him, which litigation, however, eventually terminated in his favor in August, 1869. The defendants, Conner and others, having a judgment against William McCelvey for upwards of $9,000, levied their execution upon the assigned property, whereupon the assignee, Mars, on the 28th of September, 1866, filed this bill against Conner *et al.* to enjoin the sale under their execution, to reduce the amount of their judgment, and to marshal the assets of William McCelvey. On the 29th of September, 1866, the injunction was granted, and on the 7th of November, 1866, the late Judge Wardlaw granted an order in both the above mentioned cases directing the lands to be sold, (the proceeds of sale of the Clay tract to be held subject to the order of the Court until the issue at law which had been ordered in the case of *Hugh McCelvey* vs. *William McCelvey* should be determined,) the creditors to be called in, and the assignee to account, and, also, granting leave to make Wm. McCelvey, then resident in Texas, a party to the bill filed by *Mars* vs. *Conner and others.*

A. L. Welch, a party defendant to the bill filed by *Hugh McCelvey* vs. *William McCelvey,* who had also set up a claim to the Clay tract, having had the sale made under Judge Wardlaw's order set aside, W. D. Mars, on the 13th April, 1867, filed a supplemental bill against Conner and others, making Welch and the two McCelveys—Hugh and William—parties defendants, and upon this bill an order *pro confesso* was taken against William McCelvey on the 4th June, 1867. Chancellor Lesesne, by an order dated 12th June, 1867, entitled in both of said cases *Hugh. McCelvey* vs. *William McCelvey* and *A. L. Welch and W. D. Mars* vs. *A. P. Conner and others*, confirmed the report of the Commissioner, marshaling the assets, in which the judgment in favor of Conner and others was reduced to $338, and directed the sale of the lands for cash, the proceeds of the sale of the Clay tract, however, still to await the determination of the issue at law above mentioned. This order, among other things, also directed that the Commissioner should, from the proceeds of sale, (not including the proceeds of the sale of the Clay tract reserved,) and from funds received by him from any other

sources, pay the tax costs in the case of *Mars* vs. *Conner and others,* and such fee as may be allowed complainant's solicitors by order of Court; and "that the tax costs of the case of *Hugh McCelvey* vs. *William McCelvey and others* be paid from the sales of the latter tract of land above mentioned." A reference was then ordered to ascertain what would be a proper fee for Thomson & Fair, complainant's solicitors, in the case of *W. D. Mars* vs. *Conner and others,* and the amount was fixed, by order of the Court, dated 15th June, 1867, at four hundred dollars. In pursuance of the order of Chancellor Lesesne, the two tracts of land were sold by William H. Parker, the Commissioner in Equity, on the 7th of October, 1867, and bid off by Thomas Thomson—the Wells tract for $900 and the Clay tract for $920. The price of the Wells tract was paid in cash, but the price of the Clay tract was not then actually received by the Commissioner, though he charged himself, on his books, with the amount. No title was made to Thomson until the 19th of November, 1868, though Thomson and William H. Parker, (who, at some time after the sale, exactly when does not appear, became interested with Thomson in the land,) rented the same to one Carter for the year 1868. On the same day that Parker, as Commissioner in Equity, executed a deed to Thomson for the land, Thomson conveyed to Parker a half interest therein, and immediately thereafter they, Thomson and Parker, conveyed to Reed and Brown, at a considerable advance on the price paid by Thomson at the Commissioner's sale, which conveyance, however, it is proper to add, contained a clause of warranty against the contingent right of dower in the wife of William McCelvey, and also against the claim of Welch, and this, it was said, accounted for the increased price. In June, 1870, the case of *Hugh McCelvey* vs. *William McCelvey and A. L. Welch* and the case of *W. D. Mars* vs. *A. P. Conner and others* were both marked "ended" on the docket. William McCelvey returned to this State in August, 1870, and soon after his return commenced two actions, one against W. D. Mars and the other against Thomas Thomson and William H. Parker. The object of the former seemed to be to obtain an accounting from Mars, as assignee, who put in his answer claiming that little or none of the assets of the assigned estate had ever come into his hands, but that under his bill against Conner and others all that had not been sold by the Sheriff had gone into the hands of the Court of Equity, where he had already accounted, and insisted that he could not

again be required to account. This defense was sustained by the Referee, to whom this case was referred, and the propriety of his decision seems to have been recognized by William McCelvey, for, so far as the Court is informed, no further proceedings were ever had under this action. The other action, the one against Thomson and Parker, was brought for the purpose of recovering damages against them for alleged fraudulent collusion in the sale and purchase of the lands above mentioned, as it would seem from what is said of this case in the opinion of the Supreme Court hereafter to be adverted to, though the papers furnished us do not disclose distinctly what was the nature and purpose of this action.

Finally, on the 15th January, 1872, Wm. McCelvey filed what he calls a petition in the cause of *W. D. Mars* vs. *A. P. Conner and others,* claiming that he was a necessary party to that cause, and that he had never been properly made so; that the cause was improperly marked "ended," and asking that the case should be restored to the docket, that he might have leave to come in and answer; that the cause should be reheard; that the sale of the lands should be set aside, and, if necessary, that the lands be resold and the proceeds applied under the assignment according to law.

It is very obvious that the relief asked for in this petition could not be obtained without making Thomson, Parker, Reed and Brown parties; and although the petition does not in form pray that they should be made parties, yet copies of it seem to have been served upon these persons, who thereupon came in and answered, so that the transactions between these parties culminated in five different cases: First, *Hugh McCelvey* vs. *Wm. McCelvey and A. L. Welch,* for specific performance; second, *W. D. Mars, Assignee,* vs. *A. P. Conner and others,* for injunction and to marshal assets; third, *Wm. McCelvey* vs. *W. D. Mars, Assignee,* for an accounting as assignee; fourth, *Wm. McCelvey* vs. *Thomas Thomson and Wm. H. Parker,* for damages for the alleged fraud in the sale of the land; fifth, Ex parte *Wm. Celvey,* in re *W. D. Mars* vs. *A. P. Conner and others,* being the petition just above mentioned. The matters in controversy in the three last named cases were referred to Silas Johnstone, as Referee, to hear and determine the same, who made his report, which being confirmed by the Circuit Court an appeal was taken to the Supreme Court, where it was determined that the case of *Mars* vs. *Conner and others* had been improperly marked

"ended;" that Wm. McCelvey had been properly made a party to that cause, and that, notwithstanding the Act of 1784, (7 Stat., 210,) he was not entitled "to a rehearing of so much of the merits of the case as terminated in the order made on June 12, 1867, for a sale of the lands, inasmuch as he did not come in within the time allowed by that Act." And after deciding that the sale must stand, but that Thomson and Parker, though expressly relieved from any imputation of moral fraud, are liable for the profit they made on the sale, upon the ground of the fiduciary relation in which they stood to Wm. McCelvey, directed that "the costs under the petition must be paid by Wm. McCelvey, and the costs in *Wm. McCelvey* vs. *Thomson and Parker* by the respective parties on whose behalf they were incurred," and remanded the case to the Circuit Court for such orders as might be necessary and proper to give effect to the views and principles announced in the opinion.

In conformity with this judgment of the Supreme Court, Judge Carpenter, on the 17th May, 1876, granted an order, which was assented to by the attorneys for Wm. McCelvey, referring it to a Referee to state the accounts of the assigned estate of Wm. McCelvey, including in the assets of such estate the sum of $1,240, (which was the profit made by Thomson on the sale of the land,) and the interest thereon from the 19th November, 1868, ordered to be added by the Supreme Court, and any other assets of the assigned estate; to notify the creditors of Wm. McCelvey, whose claims were embraced in the report of the Commissioner, which was confirmed by Chancellor Lesesne, 12th June, 1867, to present their demands, or so much of them as remain unpaid, on or before a given day; and to report the debts yet remaining unpaid, adding thereto "the tax costs in the case of, first, *Wm. McCelvey* vs. *W. D. Mars*, and, second, *Wm. McCelvey* in re *W. D. Mars, Assignee*, vs. *Thomas Thomson and Wm. H. Parker*, (which is undoubtedly the same case as that hereinbefore entitled "Ex parte *Wm. McCelvey* in re *W. D. Mars, Assignee*, vs. *A. P. Conner and others*,") and the plaintiff's costs in the case of *Wm. McCelvey* vs. *Thomas Thomson and W. H. Parker;* the Referée to tax said costs, including proper compensation to the Referee appointed in the three cases upon the motion of plaintiff McCelvey.

The Referee having made his report under this order, sundry exceptions thereto were filed on behalf of Wm. McCelvey, all of which being overruled by the Circuit Judge the same exceptions

are presented here by way of appeal. It is not necessary to make any detailed statement of the terms of this report, as the points which we are called upon to review can be made sufficiently to appear from a statement of the exceptions. The first exception complains that the Referee erred in charging Wm. McCelvey with the costs in the case of *H. McCelvey* vs. *Wm. McCelvey and A. L. Welch.* We agree with the Referee that this matter was concluded by Chancellor Lesesne's order of 12th June, 1867, and that so far from the decision of the Referee being in conflict with that of the Supreme Court, it is strictly in accordance with it. For as we understand the previous decision of this Court, it is that Wm. McCelvey, having been properly made a party to the case, he is bound by all orders made therein, where he failed to avail himself of the privilege afforded by the Act of 1784 by coming in and objecting within the time fixed by that statute. The second exception which objects to the fee allowed Thomson and Fair, besides being disposed of by the same considerations as have just been adverted to in reference to the first, is evidently taken under a misapprehension of the facts. This fee was not allowed in the case of *Hugh McCelvey* vs. *Wm. McCelvey,* as seems to be assumed by the terms of the exception, but it was in the case of *W. D. Mars, Assignee,* vs. *A. P. Conner and others,* in which these gentlemen represented the assigned estate of Wm. McCelvey, and of course were entitled to be paid out of the assets of that estate. We may also add that their services seemed to have proved very valuable to the assigned estate, as they succeeded in reducing a judgment claim against it from upwards of $9,000 to the comparatively insignificant sum of $338, and but for these services there would probably have been no assets of the assigned estate left for the parties to contend about. This, taken in connection with the testimony of Wilson and of Cothran, leaves no room to doubt the propriety of the allowance. The third exception, which complains that the rent of the land for the year 1868, received by Thomson and Parker, was not charged against them as part of the assets of the assigned estate, is based upon a misconception of the judgment of the Supreme Court, as it seems to assume that by that judgment the sale to Thomson and Parker was declared invalid, and therefore that the land still remained the property of Wm. McCelvey, whereas the very reverse is the true construction of that judgment. The Supreme Court expressly declined to set aside the sale, and, on the contrary, confirmed it, using

this language: "The petitioner (McCelvey) cannot have the decree for the sale set aside, because, a party to the bill where it was ordered, he did not move to contest it within the time permitted by the statute;" and again "the sale to Reed and Brown must stand," and directed that Thomson and Parker should be charged with a specific sum of money, $1,240, (the profit made on the sale,) and interest, and the Referee very properly declined to add to the judgment of the Supreme Court any other sum of money, whether in the form of rent or otherwise. As to the fourth exception, which assails the report because the note of Wm. McCelvey to Wm. McGowan, dated subsequently to the deed of assignment, was set down as one of the unpaid debts of Wm. McCelvey, we do not think it well taken. This claim had been previously established under the original order calling in creditors, and is mentioned by the Commissioner in his report dated 31st May, 1867, as a claim by open account for $250, and was subsequently, by agreement between the parties, reduced to $150, for which the note in question was taken, and though dated prior to the making of the report was in fact executed afterwards. Upon this ground McCelvey claimed that the note was a satisfaction of the prior claim, and, being given subsequent to the report, is a new debt, not payable from the assets of the assigned estate, or rather is not to be included in the accounting ordered. On the other hand, it is claimed that this note was not taken as payment, but merely as a substitute for the original claim, and as a memorandum that the amount had been so reduced ; and that such was the real intention of the parties, the circumstances attending the transaction leave no room to doubt; and, if so, then, clearly, the note is not to be regarded as payment of the original claim.—*Burton* vs. *Cressly*, Chev. Eq., 1; *Gardner* vs. *Hust*, 2 Rich., 601; *Charles* vs. *Coker*, 2 S. C., 22. And as the Referee was directed to "report the *unpaid* debts yet remaining against the said McCelvey," and as there is no pretense that this debt has ever been paid in any other way than by giving the note in question, which, as we have seen, did not amount to payment, the claim was very properly allowed.

The fifth and seventh exceptions—the former objecting to the allowance of costs to the defendant in the case of *Wm. McCelvey* vs. *W. D. Mars*, and the latter to the charging Wm. McCelvey with the fee of the former Referee,—are effectually disposed of by the very terms of Judge Carpenter's order, to which the appellant,

through his counsel, assented; for by the express terms of that order these very items which are now excepted to were directed to be charged against the appellant, and it is too late now, even if the objections were originally maintainable, to object to these charges. To this we may add that the fifth exception proceeds upon a mistake as to the facts; for the objection to charging Wm. McCelvey with the costs in *McCelvey* vs. *Mars* is based upon the assumption that McCelvey " prevailed in that suit," whereas the fact, as we have seen, is otherwise. The Referee (Johnstone) reported that Mars, having already accounted to the Court of Equity, was not liable to a further accounting as asked for in this case, and no exception was taken to that part of his report, which was confirmed. In fact, if there was any error committed in respect to the matter mentioned in the seventh exception, it was in favor of the appellant; for, by the terms of Judge Carpenter's order, the whole amount of the Referee's fee, instead of only two-thirds of it, might have been charged against McCelvey, though it is due to the Referee to add that only two-thirds was charged, by consent of Thomson and Parker. The only difficulty presented by the sixth exception arises mainly from the somewhat indefinite terms in which the exception is taken. The following are its terms: " Because the Referee erred in allowing costs to the persons who volunteered answers in the case of Ex parte *McCelvey* filed in this cause, the said allowance being unsupported by any statute and illegal." This language would seem to imply that the point of this exception is, not that costs had been allowed under a petition in the cause, as this proceeding was called, in the absence of any statute allowing costs in such a proceeding, but that certain persons had unnecessarily intruded themselves into the cause, *volunteering* answers, and that *such persons* should not have been allowed any costs at all. If the exception is to be confined to this point, we would have no hesitation in overruling it; for we are at a loss to understand how it can be said that the defendants alluded to *volununteered* answers, when it was absolutely necessary that they should have been made parties in order to secure a proper determination of the claims set up by the appellant in his petition, and, being thus necessarily made parties, their answers, which, doubtless, they were advised to put in as essential to maintain their defense against what they regarded as the unjust and unfounded claims of the appellant, cannot, in any proper sense, be regarded as "*volunteered.*"

It cannot escape attention that this proceeding, though nominally " *ex parte,*" and styled a petition in the cause, was, in reality, a new action, with new parties, seeking new and different relief from that contemplated in the original cause. That cause was, as we have seen, a bill filed by the assignee, W. D. Mars, against the creditors of his assignor, to which the assignor had also been properly made a party defendant, as the Supreme Court has heretofore decided, for the purpose mainly of marshaling the assets of the assigned estate. To this bill neither Thomson nor Parker, nor Reed nor Brown had been made parties, nor, indeed, were they necessary or even proper parties; and while Thomson might, by his purchase at a sale under an order in that cause, have, for some purposes, become a party to the proceedings, this cannot be said of Parker, who purchased an interest from Thomson, or of Reed and Brown, who purchased from Thomson and Parker.

The petition, on the other hand, was filed for a wholly distinct and different purpose, its main object being to set aside the sale of the land; and to such a proceeding, for such a purpose, not only Thomson and Parker, but Reed and Brown also, were necessary as well as proper parties. They therefore had a right to make their defense to the claims set up against them, either by answer or demurrer, as they might think best. And here it may not be amiss to observe that the defense of Reed and Brown seems to have been entirely successful, while that of Thomson and Parker was equally so, in defeating the main object of the petition, setting aside the sale of the land, although a recovery was had against them, which, for all that the Court can see, might just as well have been had in the action for damages, the fourth in the series of actions above enumerated, which had previously been brought, but which, for some reason of which the Court is not advised, had been passed over, although it was then pending, but in what condition or to what stage it had reached the record does not disclose. If, however, we are to construe the language of this exception so as to mean that there is no statute fixing an allowance for costs, under a petition in a cause, and such, judging from the argument of the counsel for the appellant, seems to have been the real meaning intended, and that, therefore, the allowance was illegal, it will be necessary for us to consider the exception in that aspect. Taking this view of the scope and intention of this exception, a sufficient answer to it would be that this matter had already been determined by the

Supreme Court when it adjudged that " the costs under the petition must be paid by William McCelvey." But, in addition to this, we may say, that while it is true that there is no statute allowing costs " *of course* " in a case like the one now under consideration, it is equally true that the Code of Procedure, after declaring that " costs shall be allowed *of course* " in a certain class of actions, provides, in Section 332, that " in other actions costs may be allowed, or not, in the discretion of the Court." The Courts of New York have construed the words " other actions," in a corresponding Section of their Code, to embrace " equity causes," or, more properly speaking, those actions in which the relief sought was, prior to the Code, obtained only in a Court of equity.—*Hines* vs. *Myers*, 4 How., 356; *Gallagher* vs. *Egan*, 2 Sandf., 742; *Stager* vs. *Schultz*, 3 Trans. App., 4; *Barber* vs. *White*, 3 Trans. App., 86; 5 Abb., (N. S.,) 121. See, also, 2 Tilling & Spear Prac., 594. And as we regard this petition in the cause, as it is called, as practically an action of that kind, we think the question whether costs should have been allowed or not was wholly within the discretion of the Court; and as that discretion seems to have been exercised by the order of the Supreme Court fixing the liability for these costs upon William McCelvey, which, under the order of Judge Carpenter, have been taxed against him by the Referee, whose report containing such taxation has been confirmed, we are unable to discover any ground upon which this exception can rest. It is scarcely necessary for us to add that we are not to be considered as either approving or disapproving the correctness of the several *items* contained in the bill of costs, as presented in the report of the Referee, as this appeal opens up no such inquiry, and if it did we have not been furnished with the necessary *data* to determine such a question.

The motion is dismissed.

*Willard*, C. J., concurred.