CASE No. 1012.

## JOHNSON v. CLARKE.

1. Whether one security operates as payment of another, is always a question of intention, the *onus probandi* resting upon the party affirming it.
2. Where the issues in a common law case have been referred to a referee, and his findings have been confirmed by the Circuit Court, this court can consider only questions of law raised by proper exceptions.
3. Concurrent findings of fact by referee and Circuit judge, in such case, set aside, it appearing that error of law was committed in improperly imposing upon the plaintiff the burden of proving that a second note was given as a substitute and not as a payment.

---

Before MACKEY, J., Kershaw, September, 1879.

Action by Hampton Johnson and John Johnson, trustees of Isabella Joiner, against T. H. Clarke, as executor of Henry H. Clarke, deceased, and against T. H. Clarke. The judgment demanded was against T. H. Clarke, as executor, &c., to be levied of the goods, &c., of H. H. Clarke, &c., "and if none, then of the further goods, &c., of T. H. Clarke." The case is stated in the opinion.

The Circuit decree, after fully stating the pleadings, evidence, report of referee and the exceptions to the report, continues as follows:

There is no evidence whatsoever to show that the reason that

impelled the plaintiffs to take the new note at the increased rate of interest, was to make " an approximation to the par value of gold and currency." Nor is there any proof that the new note was taken under a clear understanding that it was to stand in lieu of the old note. The witness, John Johnson, states that he was not present when the notes were exchanged between his co-trustee, Hampton Johnson, and the defendant, T. H. Clarke, and he professes to recite only what he heard Hampton Johnson say upon the subject.

As this reported conversation between the plaintiffs is not shown to have been held in the presence of the defendant, T. H. Clarke, it was clearly inadmissible hearsay, and should not have influenced the finding of the referee in any degree. On this point the witness, John Johnson, testifies as follows : " I never spoke to the executor in my life about changing the note ; I had no conversation with T. H. Clarke about the matter until recently." This witness further testifies that not until " about the time of the commencement of this action did he claim to the defendant, T. H. Clarke, that the new note was against the estate of H. H. Clarke." The new note matured January 10th, 1873, and this action was commenced March 15th, 1876.

On the contrary, the witness, T. H. Clarke, testifies positively that he substituted his individual note, signed as executor, for the old note of testator ; and he states, on cross-examination, that nothing was said by the plaintiff, Hampton Johnson, at the time about defendant, the witness, signing the new note as executor.

The defendant, T. H. Clarke, further testifies, and on this point his testimony is uncontradicted, that the increased rate of interest, from seven to twelve per cent., was the only consideration that induced the plaintiff, Hampton Johnson, to exchange the note of testator for defendant's note.

The testimony of T. H. Clarke upon this point is supported by the further fact in evidence, that at the time he executed the note in question he was known to be abundantly solvent, as evidenced by the plaintiff, Hampton Johnson, lending him the sum of $500 on his note without security. At that date the note of the defendant, T. H. Clarke, was manifestly regarded by the plaintiffs as in every respect as good as the note of the deceased,

and it fully appears from the testimony that it was not urged as a demand upon the testator's estate until the defendant was generally reputed to be financially embarrassed.

Moreover, as every man is presumed to know the law, it must be assumed that the plaintiffs well knew that the defendant, T. H. Clarke, as executor, had no legal power or authority to bind the estate of his testator by increasing the rate of interest of the testator's note from seven to twelve per cent., and thus committing a breach of his trust as executor by charging his estate with a rate of interest which was usurious when testator's note was executed. Had the executor applied any of the assets of the estate to the payment of such usurious note, even though executed by the testator, he would have been guilty of a *devastavit*, as in the case of a bond *ex turpi causa*, as well against the legatees as creditors. *Vez* v. *Emery*, 5 *Ves*. 142; *Winchcombe* v. *Bishop of Winchester, Hob*. 167; 2 *Wms. on Ex'rs* 1634, 1635.

The mere circumstance, stated in the second exception, that the defendant about the time he signed the note in question "T. H. Clarke, executor," borrowed money from the plaintiff, Hampton Johnson, and gave another note therefor, which is signed "T. H. Clarke" simply, without the affix "executor," is sufficiently explained in the testimony of the defendant, that there was no agreement that he should sign the new note as executor, and that it was so signed through inadvertence. This circumstance is also fully counterpoised, if it has any weight at all, by the fact that in defendant's letters to the plaintiff, Hampton Johnson, (which letters are adduced in evidence by the plaintiffs,) in reference to giving the note in question for the testator's note, and immediately pending the exchange of notes, defendant signed himself "T. H. Clarke," without the addition of the word "executor."

It may be stated generally, as settled law, that a referee's finding of fact has all the weight of a verdict of a special jury, and should not be disturbed unless clearly against the preponderance of the evidence.

The exceptions to the conclusions of the referee, as to the matters of fact herein, are therefore overruled. The remaining

four exceptions, which relate to the findings of law, may, for the sake of brevity, be considered together.

It is well settled that if a person indebted in one right, in consideration of the forbearance of the creditor promises to pay in another right, this convenience will be a sufficient consideration to maintain an action against him in the latter right. *Rann* v. *Hughes,* 7 *T. R.* 346 ; *Forth* v. *Stanton,* 1 *Wms. notes to Saund.* 211 ; *Sm. on Cont.* \*87.

In the case at bar the defendant, T. H. Clarke, as executor, was pressed by importunate creditors of his testator to pay a note with interest, long due. He tendered such assets as he held in payment and they were refused. The creditors were urgent, and insisted that they were entitled to demand gold coin in payment of a note in which it was not expressly stipulated that it should be paid in specie.

That demand was made at a period when a gold famine prevailed in the money markets of the country. The executor tendered in payment the lawful currency of the United States, known as " greenbacks," then as now universally recognized as a legal tender in the commercial world, and so declared by law.

In that conjuncture of the affairs of the estate committed to his charge, the defendant, T. H. Clarke, executor, gave the note which is the subject of this action, and received in exchange therefor testator's past-due note, thereby securing the estate against suit for at least one year.

I am fully warranted by the evidence in holding that this was the consideration which moved the defendant to give the note in question, for the creditors, by refusing the lawful paper currency of the country, and demanding gold coin in payment, thereby virtually declared their purpose to bring suit immediately upon their note if a satisfactory arrangement was not made for its future payment, which arrangement was effected by their receipt of a note bearing nearly double the rate of interest of that on which they were pressing payment so inordinately. There is no doubt that such forbearance on the part of the creditors, in agreeing to accept another note payable at a future day, or the preventing of a suit by giving such note, would be a sufficient consideration to bind the executor individually. The authorities

in support of this view may be multiplied indefinitely. *Johnson* v. *Whichcott,* 1 *Roll. Ab.* 24; *Davis* v. *Reyner,* 2 *Lev.* 8; *Goring* v. *Goring, Yelv.* 11; 1 *Sid.* 89; case of *Scott* v. *Stephens.* Says the learned author, Williams on Executors, vol. II., *1614 : " If an executor be indebted to J. S. in £100, who demands the money, the executor is chargeable only in respect of assets, and not otherwise; but if he promises to pay the debt *at a future day* the forbearance is a sufficient consideration, and it becomes *his own debt* and to be satisfied out of his own estate. Said Chief Justice Hale in the leading case of *Homer* v. *Smith,* 2 *Lev.* 122, " though a bare accounting by the executor with a creditor of his testator will not bind the executor to pay *de bonis propriis,* yet a promise in consideration of forbearance will."

It now remains to determine whether the defendant, T. H. Clarke, by giving the note described in the complaint, and receiving the testator's note therefor, *did* discharge the estate from the debt and bind himself individually.

The note given by the said defendant was a sealed note, which itself imports a sufficient consideration. The executor is a trustee for all persons interested in the estate, both creditors and legatees, and the law throws around such estate peculiar safeguards to protect it alike from criminal *devastavit* and an improvident administration of the trust. Hence, it impresses upon the acts of an executor a certain legal character and effect, of which all must take notice who deal with him in regard to the estate. Creditors of the testator who contract with an executor are assumed in law to do so with full knowledge of the legal limitations upon his powers, and to know when the contract binds the estate of the testator and when it binds only the individual estate of the person who holds the executorship.

On this head the following modern case is of the highest authority, and directly in point. Two executors gave a promissory note, for a debt of the testator, to the plaintiff, in the following words: " *As executors* to the late T. T., we severally and jointly promise to pay to N. C. the sum of £200 on demand, with *lawful interest* for the same." The Court of Common Bench held that they were *personally liable* on the instrument, upon the ground that " the promise, from the circumstance of

*interest* being added, necessarily imported a payment at a future day; and an executor promising to pay a debt at a future day makes the debt his own." *Childs* v. *Monins*, 2 *Brod. & B.* 460; see, also, 2 *Wms. on Ex'rs* 1613, and cases there cited. In the case now under consideration the executor not only promised to pay at a future day, but entered into a new contract entirely distinct from that entered into by the testator, and which was forbidden by law at the date of the original contract with deceased; such new contract being in the form of a sealed note, bearing interest at an exorbitant rate, far in excess of what the testator had stipulated to pay.

That a new note without a special contract would not, of itself, discharge the original cause of action, is not denied. "But," says Chief Justice Marshall, in the case of *Sheehy* v. *Mandeville*, 6 *Cranch* 253, "if, by express agreement, the note is received as payment, it satisfied the original contract, and the party receiving it must take his remedy on it." This principle appears to be well settled. The note of one of the parties, or of a third person, may, by agreement, be received in payment. See, also, on this point Lord Kenyon's opinion in *Barclay* v. *Gooch*, 2 *Esp.* 571; *Cumming* v. *Hackley*, 8 *Johns.* 202; *Witherby* v. *Mann*, 11 *Johns.* 518.

I have shown, by the authorities cited, that where an executor gives a note payable at a future day, with interest, he thereby binds himself individually, and it follows that the acceptance of such note by creditors, especially when it varies to their advantage the original contract of testator, imports conclusively an agreement on their part to discharge the estate and hold the executor individually liable. This conclusion is strongly reinforced by the fact that the creditors in this case surrendered the testator's note to the executor, and thus enabled him to legally demand and receive credit therefor in the final settlement of his accounts with testator's estate. But we are not left on this point to depend alone on the legal intendment of the transaction between the plaintiffs and the defendant; for T. H. Clarke, the executor, swears positively, and his testimony on this point is not contradicted by *legal evidence,* that the plaintiffs agreed to take his "individual note."

I have fully considered the facts recited in the exceptions, that the defendant, T. H. Clarke, credited himself, in his return as executor, with the full amount of testator's note years before he gave his own note in exchange therefor. This is explained in the testimony, the executor having acted therein under legal advice, which, though erroneous, doubtless seem to be warranted by the fact that he had tendered payment in U. S. currency, which had been positively refused, and he regarded himself as individually responsible therefor, intending to protect the estate at least from any liability on said note; and continuing for several years after his final return to pay the interest upon the same.

However this may be, certainly the surrender by the plaintiffs of testator's note to the defendant, enabled him, as executor, to fully support the credit that he had already received therefor in his final return, and deprived the legatees of any right of action against him to recover the amount so credited.

The exception that the referee should have found the debt and interest due against the defendant, T. H. Clarke, individually, if it was not due by him as executor, does not appear to be tenable. Says Williams on Executors: " A plaintiff cannot have an action against a defendant to charge him as executor, and also in his own right, for the judgment in the one case is *de bonis testatoris*, and in the other *de bonis propriis*. And such misjoinder of action, as well against an executor as by him, is a defect in substance, and, consequently, bad on a general demurrer or in arrest of judgment, or on error." 2 *Wms. on Ex'rs* *1754; *Jennings* v. *Newman*, 4 *T. R.* 347; *Brigden* v. *Parkes*, 2 *Bos. & P.* 424.

The exceptions to the referee's findings of law are overruled.

It is therefore ordered, adjudged and decreed that the report of the referee be confirmed, and stand as the judgment of this court; and that the complaint herein be dismissed, with costs.

The plaintiff appealed to this court.

Argument of the late *William M. Shannon* was submitted in behalf of the appellants.

*Messrs. Chestnut & Workman,* contra.

March 25th, 1880.   The opinion of the court was delivered by
McGOWAN, A. J.   This was an action on a note for $1200,
given to the plaintiffs as trustees, January 10th, 1872, and signed
*T. H. Clarke, executor.*  The note was given under the following
circumstances:  Henry H. Clarke, in his lifetime, borrowed
money from the plaintiffs, as trustees, and gave them his note
for the amount, $1200.   H. H. Clarke afterwards died, leaving
a will, of which T. H. Clarke is the only qualified executor, who
made payments of the annual interest on the note for years.  The
endorsement of the numerous payments covered the back of· the
note, leaving no room for other credits, and, in 1872, as stated,
the note sued on was given.   The question was, whether the new
note was a payment and satisfaction of the old note against the
estate of H. H. Clarke, or was a mere substitution.   By consent
the case was referred to W. Z. Leitner, Esq., as special referee,
who heard the testimony and reported that, in his judgment, the
new note was taken in satisfaction of the old note, which was given
up; that it was the individual note of T. H. Clarke, and that
the estate of H. H. Clarke was discharged.

The Circuit judge confirmed the report, and from his judg-
ment the appeal comes to this court upon the following, among
other, exceptions:

" 1. That his Honor erred in the statement of the evidence, as
reported by the referee, and especially in this, that the consider-
ation for the exchange of notes was only the increase of interest,
when the whole evidence and the statement of the witness, and
defendant, Clarke, himself, states that the note was full of credits,
and that one credit on the old note had to be written on a sepa-
rate paper.

" That the signature of the defendant, as executor, was an
inadvertence instead of a thoughtful act, showing that it was a
debt of the estate, and his signing his own note in his own name,
about the same time, is pregnant with proof of his intention.

" 2. That his Honor erred in law in holding that the mere
surrender of the note was equivalent to payment; that it was
necessary for plaintiffs to show that there was an express agree-

ment that the new note was given as and for a continuation of the old debt by testator. Payment is an affirmative proposition, and the burden of proof rests on the party pleading it."

The main question involved was one of fact; whether by the change of the old note for the new the parties intended to pay and discharge the old note, which was a debt of the estate of the testator, H. H. Clarke, and to take instead the individual note of T. H. Clarke, the executor. Whether one security operates in payment and satisfaction of another, is always a question of intention. *Burton* v. *Pressly, Cheves' Eq.* 1; *Costello* v. *Cave & Bradley*, 2 *Hill* 528; *Adger* v. *Pringle*, 11 *S. C.* 527, and authorities cited. Upon the question of intention, there is not much testimony. Hampton Johnson and T. H. Clarke, the executor, made the exchange. Johnson is now dead, and the defendant, T. H. Clarke, is the only living witness of the transaction.

It is not within the province of this court to review the whole case and decide as to the weight of testimony. Although the issues of law and fact were referred to a referee, that alone does not make this a "case in chancery." It is still a law case, and, therefore, it is the duty of this court to consider only errors of law which may be raised by exceptions. This court always hesitates to set aside the judgment of the Circuit Court when it concurs upon facts with the report of the referee. Yet this rule, properly understood, only applies where the facts have been considered upon proper issues, and especially in regard to the burden of proof. It does not apply when there has been error of law in the manner in which the facts were considered as bearing upon the proper issues in the case. The defence of the defendant amounts to the plea of payment and satisfaction, and, as in all other cases, he who affirms must prove. The *onus* of proof was upon the defendant to maintain his plea. As the court say in the case of Adger *v.* Pringle, before cited, "whether the debt of the ancestor is discharged by the bond of the heirs, is a question of fact depending upon intention. It is not payment unless so accepted by the creditor, and the burden of proof is upon the party affirming it." The referee held and the Circuit judge sustained him, as follows:

"The fact that the new note was signed by T. H. Clarke, as executor, does not, of itself, bind the estate of H. H. Clarke, deceased.    It could, at best, be regarded only as a link in the chain of evidence to show that the new note was intended as a substitute for the old.    But this is destroyed by the fact that the old note was delivered up; the further fact that there was no express understanding that the new should stand for the old, and the still further fact that the new note was based upon a new and distinct consideration."

As we understand it, this substantially affirms the proposition that it was necessary for the plaintiffs to show that there was "an express understanding" that the new note was intended as a substitute for the old note, and that, having failed to do so, judgment for the defendant must follow.    This is the reason of the rule, as we understand it.    The plaintiffs stood upon their note, and the defendant, whose defence was payment and satisfaction, should have shown affirmatively that the new note *was intended to be and was actually received in payment and satisfaction.*    This might be shown by facts and circumstances, as well as by positive proof.    The only witness to the transaction now living, T. H. Clarke, does not say that was the understanding and agreement of the parties.    He says "he does not recollect that Mr. Hampton Johnson, in express words, spoke of the substituted note as a release of the original note."    There is no positive proof upon the subject.    The circumstances under which the new note was given—the cause which made it necessary—the identity of the amount, $1200—the fact that defendant signed *as executor*, when, about the same time, he signed his own note for borrowed money in his own name without adding *executor*—his own statement that the note signed by him as executor "was substituted in lieu of the original note," all tend to negative the affirmative allegation which it was incumbent on the defendant to establish.    In looking over the testimony we see no fact in the case tending to show that *payment was intended,* except, perhaps, the change in the rate of interest, from seven to twelve per cent., and this is referred to in the first letter, January 6th, 1872, which the defendant wrote to one of the plaintiffs upon the subject of giving the new note, in these terms: "I will come up to your house

F

and *pay the balance of the interest and change the note to twelve per cent."*

We think the *onus* of proof was on the defendant, and the case should be remanded to the Circuit Court for a new trial, and it is so ordered.

SIMPSON, C. J., and McIVER, A. J., concurred.