CASE No. 1156.

MURRAY v. WITTE.

1. A purchaser of an intestate's lands sold for partition in 1853 gave her bonds for the purchase-money, and as guardian for two of the infant distributees received two of these bonds in part of their estate. As the instalments upon the bonds became due, she charged herself as guardian with the amounts, and accrued interest, and so it appeared in her returns made at the

time to the Court of Equity. One ward became of age in 1858 and the other in 1859, and the guardian, at these dates respectively, gave to each her bond, without sureties, in a penal sum double the amount ascertained to be due, and conditioned for its payment, which sum in each case was larger than the amount of her purchase-bonds. In 1866, the guardian confessed judgment upon each of these bonds given to her former wards, and under these judgments the lands purchased by the judgment debtor at the partition sale were sold. Afterwards the former wards brought their action against the vendees of the purchasers at the sheriff's sale to foreclose the statutory lien under the act of 1791. *Held,* that the bonds given to the commissioner in equity in 1853 were paid, and the lien to secure their payment thereby discharged.

2. The union of the character of debtor and creditor in the person of the guardian here, did not certainly extinguish the statutory lien that secured her indebtedness, but the circumstances of the case show that the original debt was treated by all parties as paid, and its security as satisfied.

3. One security does not operate as payment of another unless so intended by the parties; but the intent that the bonds taken by the wards at their majority should discharge the indebtedness of their guardian as then ascertained, is clearly deducible from the circumstances of this case.

---

Before WALLACE, J., Sumter, June, 1881.

Action by George M. Murray and Elizabeth N. Bradley against George W. Witte, G. M. Sanders and Robert J. Brownfield. It cannot be certainly ascertained from the brief when the action was commenced, but it was probably not long before its hearing on Circuit. The opinion states the facts.

The Circuit decree was as follows:

The first question that arises upon the merits is, was the lien destroyed by the delivery to Mrs. E. V. Murray, of her bonds as the estate of her wards. This question has been repeatedly considered, and the principles governing it stated by our own court. See *Clowney* v. *Cathcart*, 2 *S. C.* 409; *Charles* v. *Jacobs*, 9 *S. C.* 297; *Koon* v. *Munro*, 11 *S. C.* 139. The principle is fully and clearly stated in *Charles* v. *Jacobs*. It will be seen that when Mrs. E. V. Murray received her own bonds as part of the estate of her wards, there was a presumption of their payment at maturity, but this presumption was not conclusive against the wards, and they were not concluded by it, but could set up the debt and lien, if it was not actually paid.

When the plaintiffs attained their majority, Mrs. E. V. Murray, their guardian, gave to each a bond for the amounts due each by their guardian. Subsequently, Mrs. Murray confessed judgment to each upon these bonds. It is insisted that this was payment of the original debt, and operated to discharge lien. In the case of *Adger & Co.* v. *Pringle,* 11 *S. C.* 527, the court says: "Whether the debt of the ancestor is discharged by the bond of the heirs is a question of fact depending upon intention. It is not payment unless so accepted by the creditors, and the burden of proof is on the party affirming it."

In the recent case of *Johnson* v. *Clarke,* 15 *S. C.* 72, the court says: "The plaintiffs stood upon their note, and the defendant whose defense was payment and satisfaction should have shown affirmatively that the new note was intended to be and was actually received in payment and satisfaction." This rule has long been established. See *Bailey* v. *Wright,* 3 *McC.* 484; *Thomas* v. *Kelly,* 3 *S. C.* 214.

In regard to these bonds given by the guardian to her wards, only the naked facts appear that the bonds were given and judgment confessed. This is not enough to show affirmatively that these bonds were given and received in payment and satisfaction of the indebtedness of the guardian secured by the statutory lien. Judgments were entered on these confessions, executions issued and levied upon the land and bought by Kirkpatrick for five hundred dollars. Under the rule established in the cases of *Ex parte City Sheriff,* 1 *McC.* 399; *McClure* v. *Mounce,* 2 *McC.* 423; *McClure* v. *Wheeler,* 6 *Rich. Eq.,* 343, there can be no doubt as to the interest sold under a judgment and execution upon a bond that is also secured by a mortgage. These cases hold that an execution issued to enforce a judgment upon a bond that was secured by a mortgage before the judgment, is only leviable upon the equity of redemption, and that was all that passed at the sale; that the fee still remained subject to sale under proper proceedings to foreclose the lien. So here the sale under the confessions was only of the equity of redemption, and this was all that Kirkpatrick bought. The fee still remained subject to the lien, and Kirpatrick bought subject to that incumbrance. The answer set up the presumption of pay-

ment from lapse of time. There were as matters of fact, repeated acknowledgments of the liability by Mrs. E. V. Murray, in her return to the ordinary, the bonds executed and the confession of judgment as late as 1866. Twenty years did not elapse from that time to the filing of the complaint. There is no proof of other facts, to raise the presumption of payment. It not appearing that the bonds were received in payment, they are a more " acknowledgment of the amount ascertained to be due," (*Thomas* v. *Kelly*, 3 *S. C.* 214,) and are secured by the lien (*Griffin* v. *Addison*, 3 *S. C.* 109). The debt and lien still subsisting, and not barred by lapse of time, the possession of the lands cannot be set up us a bar to the enforcement of the lien. In *Wright* v. *Eaves*, 10 *Rich. Eq.* 582, it is held, that " where from payment made by the debtor or his representatives, or other cause, the mortgage debt will not be presumed satisfied, as between debtor and creditor, from lapse of time, no presumption of release or satisfaction of the mortgage will arise in favor of one holding under a purchase from the mortgagor, although twenty years have elapsed since the mortgagor conveyed the premises and delivered possession to the purchaser. Twenty years have not elapsed since the sale by the sheriff. Mrs. Murray before the sale could not claim adversely as against the lien. See also *Daniels* v. *Moses*, 12 *S. C.* 130, and *Clark* v. *Smith*, 13 *S. C.* 585. It is therefore ordered that the third ground of demurrer be overruled. It is adjudged that plaintiff have judgment for the foreclosure and sale of the land described in the complaint as subject to the lien set up in the complaint.

*Messrs. J. J. Dargan* and *Buist & Buist*, for appellants.

*Messrs. Haynsworth & Cooper*, contra.

March 7th, 1882. The opinion of the court was delivered by

SIMPSON, C. J. This is an action to foreclose a statutory lien on lands of an intestate sold for partition. The defendants demurred to the complaint. The demurrer was overruled and judgment of forelcosure pronounced. The defendants appealed

and the following is a statement of the facts out of which the
legal questions arise. Samuel J. Murray, late of Sumter county,
died intestate, in 1850, leaving a considerable estate real and
personal. On January 5th, 1852, his real estate was sold for
partition by order of the Court of Equity. His widow became
the purchaser of the Grove Hill tract, a portion of which was
located on the west side of the Charleston road. The remainder
of his lands was also partitioned at the same time, but as this
remainder is not involved in this action no further reference thereto
is needed here. The purchase of Mrs. Murray of the Grove Hill
tract on the west side of the Charleston road amounted to
$4,788.03. She complied with the terms of sale by receipt-
ing for $145.50, the amount to which she was entitled as one of
the heirs, and by executing and delivering to the commissioner
three bonds dated January 17th, 1852, bearing interest from
January 5th, 1852, with surety, two of which were conditioned
each for the payment of $1,865.35, and the other for $911.83,
all payable in three annual equal instalments. Thereupon, the
commissioner by deed conveyed to her the land.

In the meantime, Mrs. Murray had been appointed guardian
of two of her minor children, who are the plaintiffs here. Under
the order of sale the commissioner was directed to distribute the
securities and other proceeds of sale among the parties entitled
thereto, to the said parties who were of age and to the guardians
of the minors. In pursuance of this order, he made the distri-
bution, turning over to Mrs. Murray, for her ward Elizabeth
N., in October, 1852, one of her own bonds for $1,865.35, and
on the same day, another of her bonds, for the same amount, for
her ward George. The third bond was turned over to some
other of the parties, and having been long since paid, disappears
from the case.

This action of the commissioner was duly reported to the
court and was filed for information on June 6th, 1853. During
her guardianship Mrs. Murray received other funds for her
wards more than sufficient to pay their current expenses. In her
annual returns to the commissioner Mrs. Murray charged herself
with the instalments and accrued interest on these bonds at or
about the time at which they became due and payable respect-

ively. On July 7th, 1858, Elizabeth having arrived at age, a computation was made of the amount due her in the hands of her guardian. This amount was ascertained to be $4,870.58; of this amount, $2,790.94 came from the bond which the guardian had received from the commissioner. On the same day Mrs. Murray liquidated her indebtedness as guardian to Elizabeth by executing to her her penal bond of that date for $9,600, conditioned for the payment of $4,870.00 on January 1st, 1860, with annual interest until finally discharged. On this bond payments have been credited in discharge of the interest up to January 1st, 1860. George M. arrived at age in July, 1859, and the same arrangement was made with him. The amount found due him was $4,208.63, of which $2,936.89 came from the bond received by the guardian as his share of the Grove Hill land. This indebtedness was liquidated by Mrs. Murray giving to George her penal bond for $8,000.00, conditioned for the payment to George of $4,000.00. Upon this bond appears credits on January 1st, 1860, of $245.00 in excess of the interest up to that date.

In 1866, George and Elizabeth (who had intermarried with one Samuel J. Bradley) commenced actions on these last bonds, upon which Mrs. Murray confessed judgments for the penalty in each of the bonds. These judgments were duly entered and signed by the clerk on December 12th, 1866, and on the same day executions were issued and lodged in the sheriff's office for Sumter county.

Thereafter, some time in 1868, the sheriff of Sumter, by virtue of these executions, levied upon and sold the Grove Hill plantations, then in the possession of Mrs. Murray, with other property. At this sale, one James D. Kirkpatrick became the purchaser of the land at the price of $500.00. In January, 1869, Kirkpatrick having received titles from the sheriff sold and conveyed a portion of his purchase, embracing two hundred and eighty-seven acres, more or less, of the Grove Hill tract on the west side of the Charleston road, to Samuel J. Bradley. The remainder of this tract on the west side of the Charleston road Kirkpatrick sold to William Bonneau Murray, taking his bond and a mortgage of the premises. This bond and mortgage Kirkpatrick subsequently assigned to the defendant, George W. Witte.

Witte afterwards obtained a judgment of foreclosure of this mortgage against the heirs of Bonneau Murray, then deceased. At this foreclosure sale Witte became the purchaser, receiving a deed from the sheriff on February 11th, 1874. Samuel J. Bradley died in November, 1869, having a short time before his death conveyed to Samuel J. Pinckney that portion of the Grove Hill tract which he had bought from Kirkpatrick, with other lands, in trust for certain purposes. Under this deed the defendant, Robert J. Brownfield, became trustee, so that Brownfield and Witte (Geo. M. Sanders being the tenant of Witte) became possessed of all the Grove Hill tract lying west of the Charleston road purchased at the original partition sale by Mrs. Murray, to secure which purchase it is claimed by the plaintiffs that the statutory lien now sought to be enforced, attached under the act of 1791.

The plaintiffs claim that no part of Mrs. Murray's bonds to the commissioner given for this land has been paid, and they now seek by this action to enforce the statutory lien on the land in possession of the defendants, which, they allege, attached at the purchase by Mrs. Murray in 1852, and which they claim is still of force, to secure to them the payment of the purchase-bonds received for them by their guardian. The presiding judge sustained the plaintiffs and gave judgment for the foreclosure of this statutory mortgage.

The grounds of appeal are numerous, being fifteen in number, but the leading question is, whether, upon the facts stated, one or all, the statutory lien which it is admitted originally covered the land, has since become extinct, and before this action was commenced. If so, the case will end at that point, and this opinion in that event need not be encumbered with the discussion of the other questions raised. We will address ourselves first to this leading question.

The main facts relied upon by the appellants in support of their position, that the statutory lien has been extinguished, are: *First.* That the relation of creditor and debtor became united in the person of Mrs. Murray as to the bonds in question, when they were assigned to her in 1852 by the commissioner, and hence they were then paid by operation of law, and hence, also,

the land pledged for their payment was then released. *Second.* That Mrs. Murray in her annual returns as guardian charged herself with the receipt of the instalments on these bonds, with accrued interest, at about the time they fell due respectively. *Third.* The settlement between Mrs. Murray and her wards, the plaintiffs, after they arrived at age, when they each took from Mrs. Murray, in liquidation, as they state in the complaint, the penal bonds mentioned above; and, *lastly,* they rely on the lapse of time.

The effect of the union of the characters of creditor and debtor in the same person, has been often before the courts, not only in our own State but elsewhere. The most recent decision with us is *Charles* v. *Jacobs,* 9 *S. C.* 297. In that case the question was fully discussed, and the general rule, with the exceptions, presented in a concise and compact form. The authorities sustaining the positions there announced, will be found cited and discussed in the opinion delivered, so that it will be unnecessary for me to make further reference than to that case and the cases therein referred to.

The rule, as is said there, appears to be, that where a debtor becomes executor or administrator of his creditor, the debt is presumed to be paid from the time of its maturity.   *   *   * This is the general rule. But this does not bind the creditors and distributees not having assented thereto, so as to prevent them from reaching such securities, if any, by mortgage pledge or lien originally taken to secure said debt, if it should turn out that the debt had not really been paid. In other words, the presumption of payment by operation of law in such case will not defeat the securities mentioned as against creditors and distributees, in the event that no payment has in fact been made.

The presumption of payment is not conclusive, so as in itself to extinguish such securities by mortgage pledge or lien, if any. So, too, the executor or administrator may prevent the presumption of payment from attaching as to themselves, by dealing with the obligation as still outstanding, by transferring it to creditors of the estate, as was done in the case of *Charles* v. *Jacobs* and also in *Clowney* v. *Cathcart,* 2 *S. C.* 402. But in that case the union of the two characters, though not discharging the principal

·debtor, will discharge the personal sureties. If, however, the ·executor or administrator, as was said in *Charles* v. *Jacobs,* "actually treats the debt as paid and accounts for it as such, it becomes legally extinguished, and it cannot be revived by any act of the executor afterwards, such as transferring it in payment of debts of the estate; and if payment is accepted by the distributees on such account, they, too, are precluded from setting up the debt."

Now, according to these principles, the statutory lien under the act of 1791 having attached on the bonds of Mrs. Murray, the mere union of the character of creditor and debtor in her person did not in itself extinguish this lien in so far as to prevent the distributees from enforcing it. Yet, if it subsequently appears in the case that she has treated her debt as paid, and that it has so been accepted and regarded by the parties entitled to the proceeds, and that an accounting has been had upon the basis of payment to herself and accepted by the parties in interest, then the case of *Charles* v. *Jacobs* is authority for the position that the debt is extinguished and consequently with it the statutory lien also. So that the real questions are: Do the admitted facts force the inference that Mrs. Murray dealt with and treated her bonds as paid—that she accounted for the proceeds on settlement as if collected? Did her wards so understand, and have they accepted other bonds in payment?

It is stated in the complaint that Mrs. Murray, during her guardianship, charged herself in her annual returns with the instalments and accrued interest on her bonds at or about the time they respectively became due and payable. In *Clowney* v. *Cathcart, supra,* which is similar in many of its features to this case, the real estate of an intestate was sold by order of the court. James Cathcart, the acting administrator, became the purchaser, and gave his bond secured by mortgage of the premises. The order of the court, after directing the commissioner to apply the funds in his hands to the payment of certain debts, directed the balance to be paid over to the administrator to be administered in due course of administration. Under this order Cathcart's bond and mortgage were delivered to him. Shortly after receiving them, and after the characters of creditor and debtor had

thereby re-united in his person, he assigned these securities to Robinson and Caldwell, creditors of the estate, in payment of their demand, thus treating the debt as a subsisting obligation, notwithstanding the union of the two relations. Shortly after this, in his returns he charged himself with the amount of his bond with the accrued interest, and credited himself with the amount as paid to Robinson and Caldwell.

The question in the case was whether the bond and mortgage had been extinguished. The court said: "That had the administrator done any act expressive of an intention to treat the securities as extinguished and in its nature equivalent to payment, the debt would have become extinguished and the mortgage discharged." The return of the administrator was relied on, but that was held not sufficient, because, before this return was made, the administrator had assigned the bond and mortgage to Robinson and Caldwell as a subsisting obligation, and the court said: "That the return was intended to express the transaction, which was complete by the transfer of the bond and mortgage into the hands of the administrator, and the subsequent transfer of the same by him to Robinson and Caldwell." In other words, the object of the return was to show that this bond and mortgage had come into the hands of the administrator as part of the estate, and had been accounted for in the transfer to Robinson and Caldwell, and this entry in the administrator's accounts, instead of affording evidence that the debt had been paid, was evidence directly to the contrary. In that case, therefore, it was properly held that the mortgage should be enforced.

The case before the court differs very materially from *Clowney* v. *Cathcart* and also from *Charles* v. *Jacobs*, in the fact that there is no evidence that Mrs. Murray dealt with her bonds as a subsisting obligation. She did not transfer them to her wards or to any one else. We never hear of them after the assignment by the commissioner, except at or about the time the instalments fell due, when she returned the proceeds with the *accrued interest* in her hands as so much cash. This was certainly an act on her part expressive of her intent to treat the original debt as extinguished, and in its nature equivalent to payment. What else could have been her purpose? If she had regarded the bonds as

still outstanding, why have not returned them as investments, and why especially did she make this return part of the time that the instalments fell due, embracing the interest which had accrued up to that date? This transaction, so far as she is concerned, can be explained upon no reasonable hypothesis except that she had complied with her contract, and had paid herself as guardian the amount which she owed herself in that character as an individual.

But the important question is, has this debt, thus received by the guardian, been accounted for on settlement, and have the appellants accepted this settlement as payment in such way as to preclude them from now setting up the statutory mortgage against the land? The appellant, Elizabeth, came of age in 1858, and George in 1859. Very soon after each arrived of age an accounting took place. In these accountings, if the bonds of Mrs. Murray had been understood by the parties as still in existence and unpaid, they should have been produced and turned over to them respectively. The guardian was the mother of the appellants, and we cannot suppose that she had any purpose of defrauding her own children. And no doubt had the bonds been in existence as uncollected interests they would have been produced and delivered to the parties, and her notes given for the balance of the funds in her hands. But this course was not adopted. The computation was made upon the basis of her returns, as we must suppose, embracing the proceeds of these bonds as collected by her, and the remainder of the funds received by her during her administration as guardian. The amount ascertained upon this basis to be due, in the strong language of the complaint, was *liquidated* by Mrs. Murray to each of the parties by giving her penal bonds in double the amount thus found due.

In 1866, actions were instituted by both plaintiffs on these bonds, in which actions Mrs. Murray confessed judgment. Under these judgments the lands now attempted to be subjected to the statutory liens were sold in 1868, and the proceeds applied, and thus matters have remained until 1879, when this action was commenced.

Now, do these transactions furnish evidence that plaintiffs accepted and ratified the understanding of Mrs. Murray that her original bonds had been paid? That the accounting and settle-

ment above was made on that basis, and her penal bonds taken by them in payment of the amounts then found due as a finality? Or, do they show that this settlement was intended simply to ascertain the amount due, and that the bonds of Mrs. Murray were taken as mere memoranda showing the result, leaving the original bonds outstanding and to be enforced with the statutory mortgage on the lands at such time in the future as the plaintiffs might desire?

The fact that the computation and settlement were made; that the original bonds were not produced and turned over; that heavy penal bonds of the guardian were taken for the full amount in liquidation, as is stated in the complaint; that suit was afterwards brought on these bonds; that Mrs. Murray confessed judgment in these suits, that her land was sold thereunder, and the proceeds applied; that twenty years elapsed from that settlement before this action was brought, nearly eleven years of which defendants or their grantors were in possession of these lands, with the plaintiffs living near by and making no whisper of their rights under the statutory lien, afford a very strong moral presumption that it was the understanding of all parties that this settlement was final and conclusive as to the past. And the attempt now to revitalize the original indebtedness of Mrs. Murray, in the face of these facts, and after this long delay, has much the appearance of an after-thought.

'Tis true that the mere taking of a new bond does not in itself extinguish a prior bond. The authorities of this State are full to the effect that a new obligation does not amount to a satisfaction, unless it is so agreed and understood by the parties. *Thomas* v. *Kelly*, 3 *S. C.* 214; *Kelsey* v. *Rosborough*, 2 *Rich.* 244. In *Adger* v. *Pringle*, 11 *S. C.* 527, McIver, A. J., said: " The rule of law is well understood, that where a creditor takes an obligation of inferior or equal rank it does not extinguish *ipso facto* the prior obligation, as that is payment only which is intended and accepted as payment; hence, when a creditor takes a new bond for one previously held by him, which has been lost or destroyed, the original debt or obligation is not extinguished unless it is made to appear that the creditor accepted such new bond in payment; and the burden of proof is upon him who

asserts the fact that the new bond was taken as payment." In *Johnson* v. *Clarke*, 15 *S. C.* 72, the same doctrine was held, with the statement that the fact that the new bond was accepted as payment might be shown by the facts and circumstances as well as by positive proof. In *Burton* v. *Pressly*, *Cheves Eq.* 9, Chancellor Johnston said in the Circuit decree, which was adopted as the opinion of the court: "That if the new was given in payment of the old, the fair inference is that the mortgage must fall with the note. But if for mere convenience a new note was executed to take the place of the old one, the object being substitution and not payment, I suppose that all the incidents were transferred to the new."

Whether a new note then is to operate as payment, depends entirely upon the intent of the parties, and, when so intended, if there be a mortgage or other security attached to the old, it will fall with the old note. The error of the Circuit judge was not in the conclusion which he drew from the facts which he applied to this question, but in not applying all the facts. He based his decision upon the naked facts that a new obligation had been given and the confession thereon. If these had been all the facts of the case, his conclusion was in accordance with the cases above referred to. We think the return of the guardian, the failure to produce the original bonds at the settlement and to turn them over, the long delay and the profound silence of the plaintiffs for more than twenty years after the settlement and liquidation, all of which are admitted, were significant facts bearing upon the question as to the intent and understanding of the parties as to the purpose of the settlement. These were all circumstances connected with the transaction, surrounding and intermingled with it, and should have been considered.

The judgment of this court is that the judgment of the Circuit Court be reversed.

McIVER and McGOWAN, A. J.'s, concurred.