COBB v. COLUMBIA, &c., RAILROAD COMPANY.

1. Non-Suit—New Trial.—This court sustained the trial judge in refusing a non-suit, there being some evidence to support the claim, and in refusing a new trial on questions of fact.

2. Damages—Issues.—Can judgment be rendered for actual damages sustained in a case of tort, where the action is for exemplary damages?

3. Master—Acts of Servant.—A railroad company is responsible for damages resulting from acts done by its engineer maliciously, wilfully, and wantonly while in the exercise of his duties, but not for all acts of its employees, whether in the course of their employment or not.

Only Result Concurred in.

Before Kershaw, J., Abbeville, October, 1891.

This was an action commenced by Butler W. Cobb against the Columbia and Greenville Railroad Company, on August 27, 1891, to recover damages for the value of a horse belonging to plaintiff, and alleged to have died from injuries received in running away when hitched to a plow and at work near the road-bed of defendant on May 19, 1891, plaintiff alleging that the horse had been frightened and caused to run by the unnecessary, negligent, and wilful sounding of whistles and blowing off of steam, and shouting, yelling, &c., of the train crew. At the close of plaintiff's testimony, the defendant moved for a non-suit, on the ground that there is no negligence proven, and, therefore, no matter to go to the jury.

The Court: Well, I recognize the authorities which you have read as being very good law, but I think it is my duty to submit it to the jury, to say whether or not there was extraordinary and unusual and unnecessary noise made here on that occasion; whether the counsel is right in what he says, the circumstances being such as to justify and excuse the making of an extraordinary and unusual noise. The question is a question for the jury, and I will submit it to them with the proper charges.

The judge charged the jury as follows:

*Gentlemen of the jury:* The claim of the plaintiff in this case, as stated in the complaint, is that his horse was frightened by

the railroad train of the defendant, by negligent or wilful noises made, which would frighten a horse, and produced the injury which is alleged to have happened, resulting in the death of the horse, and for which they ask damages at your hands. The first point of inquiry is, whether the horse was made to run away, and received this accident, by the improper conduct of the defendant's employees; either something that they did, or ought not to have done, that was improper on their part. There are three alleged causes stated in the complaint. The first is, that the horse was frightened by the blowing of the whistle on the engine and by the escape of steam, and that is said to have been unnecessary and improper, if not wilfully done, on the part of the people in charge of the train, and that that caused the horse to become frightened and to break away from the man that was plowing him. Negligence consists of the want of due care. Was there a want of due care—due and proper care—on that occasion, on the part of the railroad employees, and did that cause the accident in question, and was that without any want of care on the part of the plaintiff? Those are the questions for you to determine.

You have heard the testimony, which is adduced here, as to what is claimed to have justified the blowing of the whistle and the escape of the steam on that occasion. Now, whatever was necessary or proper to be done in the handling of that train, the railroad authorities had the right to have done. They could not operate their railroad unless they were allowed to manage their trains in the proper manner. It is claimed, that owing to the conformation of the ground at that particular point, that in starting off it was necessary to blow off steam, to let the steam escape in the manner described, in order to get the train up the hill. Was that necessary and proper? That is for you. Then, again, it is claimed that the whistle was properly blown there, because the law requires the blowing of the whistle within five hundred yards of a place where a public road crosses the track; and they say that that is what they were blowing for. Well, if the circumstances were such as to require that—if they were required by law to blow at that particular point—they could not be held responsible for blowing. The law says that

within a specified distance of a public crossing, the engineer or persons in charge of an engine must blow the whistle or ring the bell until the crossing has been arrived at and passed; and if they were doing that on that particular occasion, they were doing no more than their duty. But it is altogether for you to judge from the evidence, to decide whether that was one of those places where they ought to have blown their whistle. Then, again, if they were doing what was improper there, was that what caused the horse to break away and run? Well, if they were improperly conducting themselves on that occasion, and caused the accident in question, then the plaintiff is entitled to recover, and in that case you are to ascertain what damages the plaintiff should recover. * * * The whole damages must not exceed the amount claimed in the complaint, but within that limit you can fix it as you think the plaintiff is entitled to recover. But the actual damage, if the plaintiff is entitled to recover anything, must be what you will give. Something was said about the plaintiff being kept out of his horse. Put them back, make them whole, if you think they are entitled to recover; but if you think the railroad company ought to be made to pay for the misconduct of their employees, that is, so far as that misconduct contributed to this accident, you will say how much you will give for that.

Something was said about some negroes on the train, who raised a shout and a hollow, and that that contributed to the cause of the running away of this horse. Well, if they were railroad hands, and their conduct contributed to the accident, why, you will make them pay for that. It is whether you find that they did something that was outside of their duties, in making noises, blowing the whistle, and letting steam escape and frightening the man's horse, and was it wilfully done. If it was justifiable, the defendant is not liable; but if it was done wilfully and unskilfully, and that it was not justified in doing that, and that caused that accident, why, the railroad will be responsible, and you are to say to what amount they are responsible.

The jury retired, and returned a verdict of $175 for plaintiff.

Notice of motion for new trial upon the minutes was given, which was refused by the following order:

A motion having been made on the part of the defendant for a new trial, after hearing argument thereon, the presiding judge, in refusing the motion, said: That the escape of steam from the engine having been proved to be necessary and proper at that point, that could not be considered as a ground of complaint against the defendant company; that the outcries and shouting of the workmen on the train was shown by the weight of the evidence to have taken place after the plaintiff's horse had been frightened, which was the injury complained of. But that there was a conflict of testimony as to the necessity and propriety of blowing the whistle at that point, which was alleged to be one of the causes of the injury complained of, and this he considered as a proper question for the jury to determine; and, therefore, it is ordered, that the motion for a new trial herein be refused.

Defendant appealed on the following exceptions:

I. From the order refusing a non-suit. Because the evidence failed to show negligence on the part of the defendant in the matter complained of, or conduct of its servants, otherwise than required in the orderly conduct of defendant's business.

II. From the order refusing a new trial. Upon the ground stated in paragraph 1 hereof; and further, that the evidence showed contributory negligence on the part of the plaintiff; and that the plaintiff proved the value of his horse at $125, and without proof of the value of his services, and without evidence sufficient for punitive damages, the jury rendered a verdict in plaintiff's favor for $175. And that in announcing his judgment refusing the new trial, the judge held that the escape of steam from the engine was not unlawful, that the hollowing of the hands upon the train was after the horse was frightened, but that there was a conflict of testimony as to the blowing of the whistle, and that that would sustain the verdict. This in the face of the testimony that there was a public crossing 500 yards ahead, and that the horse in question had from his colthood been almost raised on steam whistles, both at Parksville, in

Edgefield County, and in the lot from which he was last taken.

III. From the judgment. Upon the several grounds stated in paragraphs 1 and 2 above.

IV. From the judgment herein. Because his honor, the presiding judge, erred in charging the jury as follows: "Something was said about the plaintiff being kept out of his horse. Put them back, make them whole, if you think they are entitled to recover," thus allowing the jury to include in their verdict the value of the services of the horse, of which there was no evidence.

V. Because his honor, the presiding judge, erred in charging the jury as follows: "Something was said about some negroes on the train who raised a shout and a hollow, and that that contributed to the cause of the running away of this horse. Well, if they were railroad hands, and their conduct contributed to the accident, why, you will make them pay for that. It is whether you find that they did something that was outside of their duties, in making noises, blowing the whistle, and letting steam escape, and frightening the man's horse, and was it wilfully done. If it was justifiable, the defendant is not liable; but if it was done wilfully and unskilfully, and that it was not justified in doing that, and that caused the injury, why, the railroad will be responsible." Thus holding the defendant responsible for the acts of its servants not within the scope of their employment.

*Mr. J. S. Cothran,* for appellant.

*Messrs. Graydon & Graydon & Giles,* contra.

September 22, 1892. The opinion of the court was delivered by

MR. JUSTICE POPE. This appeal is from a judgment obtained at the October term, 1891, of the Court of Common Pleas for Abbeville County, by the plaintiff against defendant, and is upon three grounds: *first,* the refusal of defendant's motion for a non-suit; *second,* the refusal of the defendant's motion for a new trial for insufficiency of testimony; and *third,* for errors of law in the charge of his honor, Judge Kershaw, to the jury.

Under the decisions of this court, controlling the granting of non-suits and new trials, we see no error here. As to the third ground of appeal, we confess ourselves very much impressed with the force of appellant's position; so much, in fact, that we feel bound to order a new trial.

Before referring to the matters herein involved somewhat carefully, the court feels called upon to notice an error into which the Circuit Judge seems to have fallen. In our view, the plaintiff's action is for exemplary damages. Such being the case, no judgment for actual damages could have been rendered. We refer to the recent decisions of this court—*Spellman* v. *Richmond, &c., Railroad Company,* 35 S. C., 475; *Samuels* v. *Richmond, &c., Railroad Company, Ibid.,* 493.

We see no cause to interfere with the charge of the judge when the same relates to the conduct of the engineer in the employ of the defendant. If, while in defendant's employ, and in the exercise of the duties of the position for which he was employed, he maliciously, wilfully, wantonly, &c., performed those duties, either with an intention to injure the plaintiff, or with reckless disregard of the safety of plaintiff's property, the employer is liable, all the questions of fact being for the jury.

Now, as to the alleged misconduct of the train hands, we must say, admitting all that is charged as to such misconduct, that it would be a very stern rule that would hold a railroad company responsible for all the acts of its servants, whether in the course of its employment or not. Suppose a train hand in the employ of the defendant, with a pistol secreted about his person, shoots to death a stranger. Is the defendant responsible for such homicide? Suppose, in firing upon the stranger, he does not slay, but breaks his arm, and that this act is wilful and malicious, will the defendant be liable therefor? No, no, there must be a limitation to the liability of such defendants. *Goddard* v. *Grand Trunk Railway,* 57 Me., 202; Pierce on Railroads, 277. Experience has proven that it is a salutary rule to hold employers responsible for the acts of their employees while performing the duties for which they are employed, if in such performance a reckless or wanton disregard is shown to the

rights of others, but this is as far.as the law would go.   *McClen-aghan* v. *Brock*, 5 Rich., 27; *Reynolds* v. *Witte*, 13 S. C., 18.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and that the cause be remanded to the Circuit Court for a new trial.

MR. CHIEF JUSTICE McIVER.   I concur in the result; but I am not prepared to assent to the proposition that where the action is for *exemplary* damages, no recovery can be had for *actual* damages.   While it may be true that exemplary damages cannot be recovered unless the complaint contains such allegations as, if true, would warrant a verdict for that species of damages, it does not follow that the converse is true.

MR. JUSTICE McGOWAN concurred in the result.