ELMA JOHNSON, Appellant, v. CHICAGO, ROCK ISLAND &
PACIFIC RAILWAY COMPANY, Appellee.

Railroads: UNAUTHORIZED ACT OF EMPLOYEE: LIABILITY. The act
of a railway employee, with whom the custody of torpedoes
to be used in the giving of signals and operation of
trains was entrusted, in attaching a personal note to a friend
to one of the torpedoes and throwing it from the train as a
means of delivering the message, was not within the scope of
his employment; and the company was not liable to the party
receiving the communication for an injury received from the
subsequent explosion of the torpedo.

*Appeal from Johnson District Court.*—HON. R. P.
HOWELL, Judge.

THURSDAY, MAY 15, 1913.

ACTION for personal injuries by reason of the alleged
negligence of a brakeman. There was a demurrer to the
petition which was sustained, and the plaintiff appeals.—
*Affirmed.*

*Ranck & Messer,* and *T. P. Bence,* for appellant.

*Carroll Wright* (deceased), *J. L. Parrish,* and *Walker
& Ferson, for appellee.*

EVANS, J.—The petition is lacking in directness of
allegation and much is left therein to mere inference. Con-
sidering it, however, in the light of the arguments, the case
presented is in brief as follows: The plaintiff lived near
by the defendant's right of way. She was the friend of
one of the defendant's brakemen. While upon a passing

train, he undertook to deliver to her a personal note from himself. He attached it to a torpedo for the purpose of weight and threw the same to the ground near the edge of the right of way near the plaintiff's home. It is alleged also that prior to such time he had "waved at this plaintiff and had by his acts and conduct indicated a friendliness toward her and had thrown off to her magazines and other articles." In pursuance of the intent of the brakeman the plaintiff obtained possession of the note and the torpedo, both being brought to her by a third person, her sister. Later she was injured by the explosion of the torpedo, being unaware of its dangerous character. It is averred also that said brakeman had the care, custody, and control of certain dangerous articles and weapons, namely, torpedoes; the care, custody, and control of the same having been intrusted to him by the said defendant company, said torpedoes being instruments placed by them in the hands and care of said employee, and being used in the operation and control of its trains and in giving signals and orders with reference thereto, and particularly with reference to that train upon which said brakeman was working and acting and upon which the said torpedoes were at the time of the happening of the things herein complained of.

The demurrer to the petition was interposed on the general ground that the act of the brakeman which is complained of was not within the scope or in the line of his employment by the defendant; that the act complained of was purely a personal transaction between the brakeman and the plaintiff and sustained no relation to the duties of the brakeman as an employee of the defendant.

Appellant concedes the general proposition that the defendant can not be held liable unless the act complained of was within the real or apparent scope of the brakeman's employment in a legal sense. But she contends that the use of the torpedo in the manner stated was within the

scope of his duty because he had been intrusted with the care and custody thereof by the defendant, and that the defendant was therefore bound to see that such torpedoes were so used and cared for as not to expose the public to danger. The petition clearly states a case of negligence against the brakeman. Whether such negligence, however, can be imputed to the defendant depends upon the question first stated. There is a little confusion in the argument at this point a tendency to assume that, if the brakeman owed a duty to protect the plaintiff against the danger of the torpedo, then the defendant would be liable as for the acts of its employee.

We will direct our attention to the one controlling question in the case: Was the act complained of within or without the scope of the brakeman's employment? It is clear on the face of it that the act of the brakeman in attaching a torpedo to a personal note and throwing it to the ground on the right of way near the home of the plaintiff was not an act within the contemplation of his employment. It was not an act which he was required to do for any purpose or under any circumstances in the line of his empoyment. The act was apparently purely personal between the brakeman and the plaintiff. The plaintiff herself responded to the act of the brakeman as being personal to herself. The question whether the act of a servant in a given case is within the scope of his employment is often a very difficult one, although the books abound in cases on the subject. We find no case which has gone to the extent of holding that such an act as this can be deemed as within the scope of the employment of the servant.

It is contended by appellant that the case of *Alsever v. M. & St. L.*, 115 Iowa, 338, is warranty for her present contention. We think otherwise. The general question involved in this case received much consideration in the cited case, and we can do no better than to adopt the

discussion there contained.   That was a case where an
engineer of a locomotive playfully operated the blow-off
cock of his engine for the purpose of frightening some little
girls, one of which fell as the result of her fright and
broke her limb.   It was held that the act of the engineer
was within the scope of his employment.   It was a part
of his daily duty to operate the blow-off cock at various
times, according to the call of his judgment, for the pur-
pose of the cleansing of his engine and perhaps for other
appropriate purposes.   It was said: "It was part of the
engineer's duty to use this blow-off cock.   For all the record
discloses, he may then have been operating it to cleanse
the boiler.   There is no evidence to the contrary.   Whether,
incidentally to cleansing it, he engaged in the diversion of
frightening the children, or blew off the steam or spray for
that express purpose, however, we think, can make no
difference.   The company had placed in his charge an
instrumentality requiring care in its operation and manage-
ment.   He was doing precisely what the company contem-
plated he should do when it employed him, i. e., operating
the blow-off cock.   When this was to be done and how, as
said, was left to his discretion, the use of which was also
contemplated in his employment, and the company was as
responsible for a mistake or willful perversion of judgment
in its operation, if within the compass of what he was to
do, when amounting to negligence, as for his negligence in
doing that which may be conceded to have been necessary."
*Rounds v. Railway Co.*, 64 N. Y. 129 (21 Am. Rep. 597);
Cooley, Torts, page 534.   This distinction is well illustrated
by the case of *Cobb v. Columbia & G. R. Co.*, 37 S. C. 194
(15 S. E. 878), where the company was declared liable for
the misconduct of the engineer in willfully or wantonly blow-
ing off steam so as to scare a horse and cause it to run
away, but not liable for the misconduct of the trainmen, con-
tributing thereto, by shouting.   The engineer was doing
that which he might, but for the proximity of the horse,

lawfully do within the scope of his employment. Train-
men were under no circumstances engaged to do what they
did. The one thing was done within the master's business;
the other without. And on this principle *Kincade v. C.
M. & St. Paul,* 107 Iowa, 682, and *Marion v. Railway Co.,*
59 Iowa, 430, are to be distinguished from the case at bar.
The abstract rule or test was stated as follows: "We think
the true test that stated by Judge Cooley in his work on
Torts (page 536): 'The test of the master's liability is
not the motive of the servant, but whether that which he
did was something which his employer contemplated, and
something which, if he could do it lawfully, he might do
in the employer's name.'"

Applying, therefore, the discussion in the *Alsever* case
to the case at bar, we think it quite adverse to appellant's
contention. It can not fairly be said that the act done by
the brakeman was "something which his employer contem-
plated," nor "something which, if he could do it lawfully,
he might do in the employer's name."

The appellant places reliance upon two authorities an-
nounced by the Supreme Court of Ohio, viz., *Harriman v.
P., C. & St. L. R. Co.,* 45 Ohio St. 11 (12 N. E. 451,
4 Am. St. Rep. 507); *P., C. & St. L. R. Co. v. Shields,*
47 Ohio 387 (24 N. E. 658, 8 L. R. A. 464, 21 Am. St.
Rep. 840). There is some discussion in these cases which
is favorable to appellant's contention. The same court,
however, in a later case, reviewed these cases, setting forth
more fully the facts upon which they were based and
materially circumscribing their apparent holding. *Cleve-
land v. Marsh,* 63 Ohio St. 236 (58 N. E. 821, 52 L. R.
A. 142). We quote therefrom as follows:

The error occurred by regarding the principles of the
case of *Harriman v. Pittsburg, C. & St. L. R. Co.,* 45
Ohio St. 11, 12 N. E. 451 (4 Am. St. Rep. 507), as
applicable to the facts of this case. In that case an unex-
ploded signal torpedo was knowingly and recklessly left on

the railroad track at a point where the public, including children, had for years been permitted to cross the track, using it as a path of travel, and the torpedo was picked up by a boy at that place while using the path of travel in the usual manner, as one of the public passing and repassing along the same; while in the case at bar the torpedo was not picked up by the boy while passing along and upon the railroad track as one of the public, but while going upon the track in the performance of his engagement with the station agent, to light the lamp at the switch stand. His being upon the track at that time was not induced by the fact that the track had been used for years as a line of travel by the public, but by reason of his engagement to light the lamps. His rights and the liabilities of the railroad company would have been the same if the track of a railroad company had never been used as a line of travel, or if the injury had occurred while the boy was going to the switch stand south of the highway, where the railroad was not used as a line of travel, so far as appears in this case. The principle is the same as that held in *Kelley v. Columbus,* 41 Ohio St. 263, 270, where the court says: "If there had been a business room in the building, or upon another part of the lot, which would have been an implied invitation to the public to go there, it still would not help the plaintiff, when he admits that he did not go upon the lot for any such purpose." Counsel for defendant in error have cited and strongly urged the cases of *Defiance Water Co. v. Olinger,* 54 Ohio St. 532 (44 N. E. 238, 32 L. R. A. 736), and *Bradford Glycerine Co. v. St. Mary's Woolen Mfg. Co.,* 60 Ohio St. 560 (54 N. E. 528, 45 L. R. A. 658, 71 Am. St. Rep. 740), but those cases are not applicable to the case at bar. The principle of those cases and *Fletcher v. Rylands,* L. R. 1 Exch. 265, upon which they are founded, is that, if the owner of a dangerous animal or substance allows it to escape or sends it from his own premises upon the premises of another, he is liable for all proximate damages resulting therefrom. In the *Defiance Water Co.* case, water was allowed to escape to the premises of another, and it was held that proper damages might be recovered. The following cases throw some light upon the rights of the parties where some substance is cast upon the premises of another: *Columbus & H. Coal*

& I. Co. v. Tucker, 48 Ohio St. 41 (26 N. E. 630, 12 L. R. A. 577, 29 Am. St. Rep. 528); Collins v. Chartiers Valley Gas Co., 131 Pa. 143 (18 Atl. 1012, 6 L. R. A. 280, 17 Am. St. Rep. 791); Letts v. Kessler, 54 Ohio St. 73 (42 N. E. 765, 40 L. R. A. 177); Kelley v. Ohio Oil Co., 57 Ohio St. 317 (49 N. E. 399, 39 L. R. A. 765, 63 Am. St. Rep. 721). In the case at bar nothing was sent or allowed to escape from the premises of the railroad company, but the injury occurred upon its own premises. The boy came to the dangerous object, instead of its escaping and going to him. The principles governing the two conditions are very different.

It will be seen that this last utterance of the Ohio court bears against the appellant's contention here. Quite in point on the same question is Oberloni v. Boston & Maine R. R., 186 Mass. 481 (71 N. E. 980, 67 L. R. A. 422). Also Sullivan v. Louisville R. R. Co., 115 Ky. 447 (74 S. W. 171, 103 Am. St. Rep. 330); Smith v. N. Y. Central, 78 Hun, 524 (29 N. Y. Supp. 540).

The case of Cobb v. Columbia, 37 S. C. 194 (15 S. E. 878), furnishes a strong and perhaps technical illustration of the distinction between acts without and acts within the scope of employment. In that case the defendant company was held responsible for the misconduct of its engineer in wantonly blowing off steam so as to frighten a horse and causing it to run away. It was also held that it was not responsible for the misconduct of the trainman in shouting so as to frighten the horse. Appellant brings to our attention statements of several text writers tending to support her contention. But these texts are all based upon the two Ohio cases to which we have already referred and of course add nothing thereto.

The tendency of the courts has at all times been to solve doubts against the employer in this class of cases to the extent, at least, of submitting the question as one of fact to the jury. But the rule of law as such is not to be ignored. Like the other departments of government, the

courts are progressing along some lines. But it will be some time before the courts can hold that a mere act of courtship can be deemed referable to the commands of an employer.

We think the trial court ruled properly and its order is—*Affirmed.*