SULLIVAN v. SULLIVAN MANUFACTURING COMPANY.

1. The liability of the officers personally for debts of a corporation, in case of their violation of sections 16, 17 and 28 of the general incorporation act of 1869, (General Statutes of 1872, Chap. LXIV.,) under which the company was chartered, arises by contract under the provisions of their charter. *Sullivan* v. *Sullivan Manufacturing Company,* 14 *S. C.* 494.

2. The certificates in this case held not to have been made and recorded in compliance with the requirements of sections 16, 17 and 28 of the act of 1869, and, therefore, under section 29, the officers were jointly and severally liable as individuals for the debts of the corporation contracted during the time of such violation.

3. To substitute actual notice, by a creditor, of the facts required by this act to be reported and recorded, the actual notice should be of all the facts required in the record ; moreover, actual notice by the creditor could not relieve the officers of the company of the liability imposed by the act, which became a contract by them when they accepted their office, to the effect that if they failed to perform the duties then assumed, they would pay the debts of the corporation.

4. The personal liability of the officers resulted, under section 29, from a failure to perform the duties imposed by sections 16, 17 and 28, and from the time of such failure, the statute of limitations began to run in their favor, as individuals.

5. Several pre-existing notes having been consolidated into one large note, the statute of limitations would not run in favor of the officers on their personal liability until the maturity of the last note, if such last note was taken as payment, such personal liability being dependent upon the fact of indebtedness and failure to perform their corporate duties, and not upon the character or consideration of the debt.

6. But the latest note not being shown to have been payment of the older notes, the liability attached to the persons in office at the dates of the earlier notes, from which time the statute of limitations as to such indebtedness began to run in the officers' favor.

7. The relation of the officers, personally, to the debts of the corporation was not like that of partners and joint contractors, where admissions by one before the debt is barred have been held to bind the others.

Before PRESSLEY, J., Greenville, July, 1882.

This was an action by Hewlett Sullivan against the Sullivan Manufacturing Company and its officers, commenced in February, 1880. The cause has been before this court on appeal once before, and will be found reported, 14 *S. C.* 494. The

character of the action, the indebtedness and other matters will be found in the opinion of this court at the present hearing.

At the hearing, Judge Pressley permitted one of the defendants to plead the statute of limitations, the others having plead it in their original answer.

All of the certificates are furnished in the brief; but it will be sufficient to state here the original certificate of March 23d, 1871, and that of September 13th, 1872. All the certificates were signed and sworn to by the officers, and recorded by the register of mesne conveyance for Greenville county. The original certificate was as follows:

" STATE OF SOUTH CAROLINA, }
    " Greenville county.    }
                                    " March 23d, 1871.
" *To F. L. Cardoza, Secretary of State:*

" SIR—In accordance with the provisions of an act of the general assembly of said State entitled an '·Act to regulate the formation of corporations,' approved December 10th, 1869, we beg leave to make the following certificate, to wit:

" That we, stockholders of the corporation known as the Sullivan Manufacturing Company, cotton-yarn and cotton-cloth manufacturers, organized June 8th, 1870, and re-organized on the 28th September, 1870, with a capital stock of not less than twenty thousand dollars, and doing business at Fork Shoals on Reedy Fork creek, waters of Reedy river, in the county of Greenville and State aforesaid, did, on the 28th day of September, 1870, at a meeting called for that purpose, at which meeting four-fifths of the stock of the company was represented, organize our company under the provisions of the act of the general assembly above referred to, and elected the officers required by said act. Thirteen thousand four hundred and sixty-one dollars of the capital stock of the company have actually been paid in, and the par value of the share has been fixed at one hundred dollars per share."

The other certificate referred to was as follows:

                    " FORK SHOALS, GREENVILLE Co., S. C.
                        " 13th Sept., 1872.
" *To W. A. McDaniel, Clerk of the Court for said County:*

" SIR—In accordance with the provisions of an ' Act to regulate the formation of corporations,' approved December 10th,

1869, we beg leave to make the following certificate, viz.: At our annual meeting held on the fourth, the president and some of the stockholders being absent, the annual meeting was adjourned to this day. A quorum being present from notice having been given previously that the capital stock of the Sullivan Manufacturing Company would be increased by subscriptions to the original stock of said company; whereupon thirteen thousand and three hundred dollars ($13,300) in new stock was taken, namely, G. W. Sullivan, Sr., eighty-three hundred dollars ($8,300); Jane C. Todd, one thousand dollars ($1,000); E. A. Featherston, one thousand dollars ($1,000); Emma Austin, one thousand dollars ($1,000); H. E. Holland, one thousand dollars ($1,000); and James M. Sullivan, one thousand dollars ($1,000). All of said sums being paid in full, except subscription of James M. Sullivan. And further, the treasurer's books being examined, we find that from the beginning, sixteen thousand four hundred and forty-two dollars and forty cents ($16,442.40) of the original stock has been paid, and on the assessment of twenty per cent. of the original stock, the sum of thirty-one hundred and sixty-three dollars and fourteen cents ($3,163.14) has been paid. The par value of the *shares* being one hundred dollars each. And we further find there is due the company on original stock and assessments, thirty-one hundred and ninety-six dollars and ninety-six cents ($3,196.96), and that the liabilities of the company are about seven thousand dollars ($7,000).

The Circuit decree was as follows:

The matters in this case, which the decree of Judge Hudson leaves open, are the amount due the plaintiff by the said company, and the liability of its directors for the same.

I find that said company is indebted to plaintiff in the sum of $8,008.27 on note dated October 16th, 1876, with interest at 10 per cent. from December 25th, 1876. I further find that there is a balance due plaintiff on open account of $1,432.98 for cotton sold to said company during that year. For the amounts above stated, plaintiff is entitled, and is hereby authorized, to enter judgment and issue execution against the said company.

As to the liability of the directors of said company, I find that the certificate filed by them with the secretary of state is not a proper compliance with section 16 of the act of 1869, and that when the capital of said company was opened to admit new

F

stockholders, no certificate was filed according to section 17 of said act. I further find that none of· the annual certificates filed by the directors with the clerk of the Court of Common Pleas contain the necessary information to persons dealing with said company, which section 17 of said act plainly requires.

The directors have pleaded the statute of limitations, and my judgment is that the statute runs in their favor from the time the several debts were contracted. There is no sufficient proof before me as to the exact date of the several contracts, which were consolidated in the said note of October 16th, 1876. My judgment, therefore, is, that the directors who were acting at the various times when the several items of debt included in said note were contracted, are liable jointly and severally for such portions of said note as cover debts contracted during their year of service, but subject to plea of the statute of limitations, to run from the date each item of debt was contracted.

As to balance due on open account for the year 1879, I find that G. W. Sullivan, Sr., and G. W. Sullivan, Jr., were the only acting directors for that year. The testimony is clear that the company was then insolvent, and that the stockholders left it to the management of these two directors. P. D. Cureton was elected one of the directors in 1877, and then signed the defective certificate which was filed with the clerk of the Court of Common Pleas, but he took no part in any of the subsequent proceedings of said company. That fact was known to the plaintiff, and it is clear from his own testimony, and that of G. W. Sullivan,, Sr., and G. W. Sullivan, Jr., that his dealings were solely with them during the year 1879.

It is, therefore, adjudged that plaintiff is entitled, and hereby authorized to enter judgment and issue execution against G. W. Sullivan, Sr., and G. W. Sullivan, Jr., for $1,432.98, balance of 1879. It is further ordered, that the master do take the testimony and report as to what items of debt, and their respective dates, were consolidated in the said note of October 16th, 1876, and who were the directors of said company at the time each debt was contracted.

All parties appealed upon exceptions which raised the points considered in the opinion.

*Messrs. Perry & Perry* and *J. H. Whitner,* for plaintiff.

*Messrs. M. F. Ansel* and *J. C. C. Featherston,* contra.

October 2d, 1883. The opinion of the court was deliv-ered by

MR. CHIEF JUSTICE SIMPSON. The defendant, the Sullivan Manufacturing Company, doing business in Greenville county, on October 16th, 1876, gave its sealed note to plaintiff for $8,008.27, payable on or by December 25th thereafter, with interest at the rate of 10 per cent. after maturity. This note was the consolidation of other notes held by plaintiff on this company, previously given. The said company was also in-debted to the plaintiff, as he claimed, in the sum of $8,228.48 for cotton sold to it during the year 1879. The action below was brought by the plaintiff to recover payment of these de-mands, and to that end he prayed, with other relief, that he should have judgment for said sums against the company and also against the directors, George W. Sullivan, Sr., G. W. Sulli-van, Jr., D. Dunklin Moore and Paschal D. Cureton, alleging that for reasons hereafter to be examined, the said directors were personally liable for these debts.

Judge Pressley, who heard the case, held and decreed that because of the failure of the directors to comply with certain requirements of the act of 1869, entitled an "Act to regulate the formation of corporations," that the directors, G. W. Sullivan, Sr., G. W. Sullivan, Jr., and D. D. Moore, were personally liable for such of the plaintiff's claim as was not barred by the statute of limitations, which statute the said defendants had inter-posed. He further held, that as the large note of plaintiff's was but the consolidation of other smaller notes given by the com-pany at different dates prior to said consolidation, that the statute would begin to run in favor of the directors at the maturity of each of these smaller notes. He therefore gave judgment in favor of the plaintiff for $1,432.98, the amount of the cotton debt as found by him, and to which the statute had not been interposed, and ordered that it be referred to the master to take the testimony and report as to the items of the consoli-

dated debt, their respective dates, and who were the directors at the time each debt was contracted.

Both sides have appealed. The directors from so much of the decree as holds them personally liable for any part of the debts, and the plaintiff from so much as allows the said directors the protection of the statute of limitations.

First. Was it error in the Circuit judge to hold the directors liable for the plaintiff's debts? and, second, if not, was it error to permit them to shield themselves from any portion thereof by the statute of limitations? These are the questions before the court. The solution of the first must depend upon the construction of those sections of the act of 1869, under which this company became a corporate being, and then upon the fact whether the requirements of the sections had been complied with by the directors. The second upon the question whether the statute had a new starting point at the consolidation of the previous notes, or whether, having commenced with each of the old notes as they fell due, its currency continued.

The sections of the act of 1869, under which Judge Pressley held the directors liable, are sections 16, 17 and 28. He said: "As to the liability of the directors of said company, I find that the certificate filed by them with the secretary of state is not a proper compliance with section 16 of the act of 1869; and that when the capital of said company was opened to admit new stockholders, no certificate was filed according to section 17 of said act. I further find that none of the annual certificates filed by the directors with the clerk of the Court of Common Pleas contain the necessary information to persons dealing with said company, which section 28 of said act plainly requires."

The act of 1869 referred to is found in 14 *Statutes at Large*, p. 297, and the sections involved are as follows:

"Section 16. Before such corporations commence business, the president, treasurer and a majority of the directors shall sign, swear to, publish three times in some newspaper, printed in the town or county wherein such corporation is situated, and deposit with the secretary of state a certificate setting forth the corporate name and purpose of the association, the amount of the capital stock, the amount actually paid in, and the par value of the

shares in the corporation, and shall file a copy thereof with the clerk of the Court of Common Pleas in the county wherein the corporation is situated, to be by him recorded in a book kept for the purpose within thirty days after the payment of any install-ment called for by the directors ; a certificate thereof shall be in like manner signed, sworn to, deposited, filed and recorded.

"Section 17. When the capital stock and shares of any such corporation are increased or reduced under the provisions of section 14, a certificate thereof shall be made, signed, sworn to, deposited and recorded in the manner aforesaid.

"Section 28. Every corporation organized under the pro-visions of this act shall file the certificate required of corpora-tions by sections 23 and 24, and the directors shall make, and the president, treasurer and a majority of the directors shall sign, swear to, and deposit with the clerk of the Court of Common Pleas for the county in which said corporation is established or located, within thirty days after the date of the annual or semi-annual meeting next preceding the date of such certificate, a cer-tificate stating the date of such annual and semi-annual meeting, the amount of capital stock paid in, the name and number of shares held by such stockholders, the amount invested in real and in personal estate, and the amount as nearly as can be ascertained of existing demands against the corporation, all as ascertained at the date of such annual or semi-annual meeting."

Section 29 provides that " if the officers of any such corpora-tions violate the provisions of section 2, or neglect or refuse to perform the duties required by sections 16, 17 and 28, they shall be jointly and severally liable for all debts contracted during the continuance of such violation, refusal or neglect."

Sections 16, 17 and 28 are not difficult to comprehend, nor do they need interpretation. The duties imposed and required are plainly and distinctly stated. They are applicable to all corpora-tions like this. They were imposed for a wise purpose, and the consequences of a failure to comply therewith on the part of the officers are unmistakably announced. The act of 1869 is a public act. It is not hid under a bushel, but it is spread upon the statute books ; and a corporation organizing under its terms, is supposed, members, officers and all, to know its different pro-

visions and to accept its obligations, and whether the statutes be
penal or remedial can in fact make but little difference, because,
let it fall under the one class or the other, there can be no mistake
as to the real meaning of section 29, *supra,* wherein the legisla-
ture in terms not to be misunderstood enacted: That if the officers
of any such corporation shall violate section 2, or neglect or re-
fuse to perform the duties required by the other sections men-
tioned, they shall be jointly and severally liable for all debts
contracted during the continuance of such violation, refusal or
neglect.

In the face of this plain enactment it would be unnecessary
refining to halt at the question, even if it were an open question,
whether this liability results as a penalty or by contract. The
name which may be given to it will not alter its character or
lighten the burden imposed. But it is not an open question,
because the point was distinctly considered and adjudged in the
former case between these same parties, 14 *S. C.* 494. The
question, therefore, recurs, Did the directors comply with the re-
quired conditions and terms during the time the plaintiff's debts
were contracted? if not, *prima facie* liability has attached and
it must be enforced unless the defenses invoked amount to a
shield.

The findings of Judge Pressley as to the violation of sections
16 and 17 do not seem to have been expressly excepted to by the
defendants, and according to the law governing appeals these
findings are not subject to our review; but if they were, we do
not see that they have been or can be successfully assailed. In
fact it is admitted in the argument, that no certificate of the
increase of the capital stock was made as seems to be required by
section 17.

Section 16 requires that before the company commences
business a certificate containing certain facts, made, signed and
sworn to by the president, treasurer and a majority of the
directors, shall be: 1. Published three times in some news-
paper printed in the town or county wherein such corporation
is situated; 2. Deposited with the secretary of state; and,
3. A copy thereof filed with the clerk of the Court of Com-
mon Pleas in the county wherein the corporation is situated,

to be by him recorded in a book kept for that purpose. In response to these requirements the company addressed a communication to the then secretary of state, and we suppose deposited with the secretary of state the first certificate found in the brief, containing substantially the fact required, upon which is indorsed the following : " Greenville, S. C. Clerk's Office. Recorded in Register Mesne Conveyance Book CC, page 566, and recorded 27 March, 1871. (Signed,) W. A. McDaniel, R. M. C." Also, " Greenville, S. C. Clerk's Office. Recorded in Corporation Book, page 1, and recorded 27 March, 1871. (Signed,) W. A. McDaniel, R. M. C."

Judge Pressley held that this certificate filed in the secretary of state's office was not a compliance with section 16 of the act. How could he have held otherwise ? Where is the evidence that it was published three times in a newspaper printed in the city of Greenville or in Greenville county ? Where is the evidence that a copy thereof was filed with the clerk of the court of that county ? It is needless for us to inquire why the legislature demanded such special and particular acts on the part of the officers of such companies. All that it is for us to know is, *ita lex scripta est.*

Section 17, immediately following the provisions of section 16, as to depositing, recording, &c., of the certificate therein required, provides, that when the capital stock and shares of any such corporation are increased or reduced under the provisions of section 14, a certificate, shall be made, signed and sworn to, deposited and recorded in manner aforesaid. The response to this was the certificate of September 13th, 1872, (found in the brief,) addressed to W. A. McDaniel, and recorded in register of mesne conveyance, book EE, page 53. Recorded September 27th, 1872 ; signed W. A. McDaniel, R. M. C. Was this a deposit and a record in manner aforesaid ? Did the annual certificates comply with section 28 ?

We find in the brief five certificates which we suppose were intended as the annual certificate required by the section, to wit, September 13th, 1871 ; September 13th, 1872 ; September 4th, 1873 ; September 2d, 1874, and September 5th, 1877. The first is defective in that it does not state the names and numbers

of shares held by the stockholders, the amount invested in real and personal estate, nor the estimated amount of existing demands against the corporation.    The second, third, fourth and fifth are defective in the two first particulars of the first.    The third was not recorded until September 21st, 1874.    There seems to have been no certificate for the years 1875, 1876 and 1878.    Why, does not appear fully in the brief.    It was said, however, that there was no annual meeting for the years 1876 and 1878.    Enough appears to sustain Judge Pressley's findings.    There was not a full compliance with the terms or spirit of the act under which this company was attempting to do business, and Judge Pressley had no alternative but to enforce the liability imposed by section 29, which is a joint and several liability upon the officers for all debts contracted during the continuance of such violation, refusal or neglect.

As to the open account claim of plaintiff, its date and the officers of the company were known, and the judge authorized judgment and execution to enter for the amount found by him, $1,432.98, against G. W. Sullivan, Sr., and G. W. Sullivan, Jr., the acting officers.    As to the large claim, inasmuch as the dates of the different notes of which it was made up were not known, nor who were the officers at the time they were contracted, to apply the principles of law held by the judge to these demands, to wit, as to the statute of limitations, the judge ordered the master to take testimony as to the dates of these items, and who were the directors of said company at the time each debt was contracted.

This brings us to an examination of the main ground of the defense, which is, admitting the findings of the Circuit judge to be correct as to the defects in the certificates required by sections 16, 17 and 28 of the act, yet, these defects were all cured as to the plaintiff by his personal knowledge of the facts thus required, the argument being, that these requirements were intended to put persons dealing with such companies upon their guard ; to give them all necessary information as to their financial condition so that they might be dealt with understandingly ; and that while this was important and necessary as to outsiders, yet, to one actually informed as to these matters by personal contact and

familiarity with the corporation, this was wholly unnecessary; that actual notice was the equivalent if not better than constructive notice. And it is urged that the plaintiff was so informed; that he was, in fact, the financial friend and adviser of the company.

This position is founded upon the analogy drawn from the familiar doctrine in reference to the recording of mortgages and other papers required to be recorded. It is true there are many such cases where actual notice will cure the defect of non-record. Can this doctrine be applied here? In the first place there is conflict in the testimony as to the extent of plaintiff's knowledge. He was not a stockholder, though he did attend some of the annual meetings; and in one meeting in 1875 seems to have represented the stock of one Mrs. Holland. As late as 1879, however, he swears that he "had no idea that the company was then insolvent." This is sustained by the fact that during that year he sold a large amount of cotton to the company. To substitute "actual notice" for a record, in a case like this, the actual notice should convey all the facts required in the record. Here the record was required to contain many minute and special facts. It will not do to say that all this was dispensed with, because the plaintiff was the brother of the president, uncle to the directors, the financial adviser of the concern, and, generally, the confidant and friend of all the parties. All this, if true, did not necessarily bring home to him the facts which the law required these officers to set forth in their annual certificates and to be deposited and filed in public office.

But a complete answer to this position is, that the liability of the directors, under the act of 1869, arises upon contract. Mr. Justice McIver, in this case, (14 *S. C.* 500,) said that "when these defendants accepted the positions of directors of a company, organized under an act declaring that in certain contingencies they should become liable for the debts of the company, they must be regarded as having agreed that if such contingencies should happen they must pay the debts of the company." This is the true theory of the act, and the liability thereunder is based on positive contract springing into existence the moment there is a failure to do what the act requires. The plaintiff comes

into court, proves the failure, and demands the enforcement of the incident contract. Can his right be frittered away by the construction urged by the defendants? The doctrine as to recording mortgages cannot be invoked here.

The true doctrine is found in *Thomp. Corp. Off.* 422, 423, where, in discussing the question as to the outside information of the creditor, he says: "The other reports, if filed, could give him no additional information of value. How, then, could the failure, neglect or refusal to file them injure him? Why, under such circumstances, should the directors be held personally liable for their neglect or refusal to comply with sections 18 and 19? What good reason could a creditor set up for insisting upon such liability? There could be but one—the positive provisions of the statute creating such liability, &c. The liability is the same whether the corporation is solvent or insolvent at the time the debt was contracted." And again, at 426, "The reliance of the creditor, therefore, one way or the other, the fact that he may be injured or not injured because of the failure to make and file the report, the fact that the corporation may be solvent or insolvent, or that the creditor at the time he dealt with the corporation had actual knowledge of the financial condition of the corporation, will not affect the liability created by the statutes."

The consideration of the plea of the statute of limitations comes next. When this statute is applicable at all, it commences to run at the accrual of the right of action. Now we have seen that the liability of the directors arises on contract; the right of action, therefore, of plaintiff, if he has any, must come from a breach of this contract, and must accrue at the time of the breach. What is the contract? It is a general agreement made by the directors through the twenty-ninth section of the act of 1869, that they will, upon certain conditions, jointly and severally become liable for all debts contracted by the corporation. This agreement is not a necessary incident to every debt of the corporation founded upon the same consideration and attaching to such, but it is separate and apart from the debts and may or may not attach, dependent upon the contingencies specified in the act. The debt of the corporation is the primary, or rather

the original liability, and the contract of the directors is a sub-' sequent matter and founded upon different and other considerations. The debt of the corporation is evidenced by note or open account for goods sold or services rendered, as the case may be ; the liability of the directors by the terms of the section 29 of the act.

Now, it seems that the plaintiff held various notes on the corporation, all of which were given before the large note mentioned herein, and all of which were consolidated in said note. It further appears that during the times these various notes were given, the directors then in office failed to comply with sections 16, 17 and 28 of the act of 1869, and, therefore, that these directors became liable under their agreement as specified in . section 29. The cause of action to the plaintiff was the failure on the part of the directors to comply with this agreement, to wit, to pay the notes of the company according to their tenor and effect, and a right of action accrued to him, as to said directors, upon the occurrence of this failure, to wit, at the maturity of each of the notes. And now, whether that right has been barred and lost as to any or all of these notes must, of course, depend upon the lapse of time since. Has six years intervened ? It was to ascertain this that the Circuit judge referred the case to the master, and the final determination of the question must await his report.

The above is based upon the idea that the subsequent consolidation of these previous notes into the large note of plaintiff has not changed the status so far as to create new rights and impose new obligations. Let us now inquire into the correctness of this position. The consolidation of the previous notes into the large note had one of two effects. First, it created a new debt upon the corporation, of which the previous notes were the consideration, which notes it paid off and extinguished; or, secondly, it was a mere renewal of the previous notes which, for convenience, were consolidated into one and not a new debt creating a new liability. If it had the first effect, then we do not see why the directors, who were then in office, should not be liable for this large note under section 29, if at that time they failed or refused to comply with sections 16, 17 and 28. The

liability of the directors does not depend upon the character or consideration of the debt of the company, but upon the fact of that indebtedness accompanied with a failure on their part to perform certain imposed duties at or about the time the said indebtedness was contracted by the company, and in this event the currency of the statute would commence at the maturity of said large note. Under such a view, the ruling of his Honor, the Circuit judge, would be error. If, however, the second effect was the result, and the previous notes were not, in fact, paid off and extinguished, then the liability of the directors would depend upon the application of the statute to their agreement as to said notes, and the ruling of his Honor would be correct.

The pivot, then, in this branch of the case is, did this consolidation effect a payment and extinguishment of the previous debts, or was it a mere renewal, leaving those debts unpaid and still in existence. It was said in *Johnson* v. *Clarke*, 15 *S. C.* 80, that whether one security operates in payment and satisfaction of another is always a question of intention. And this seems to be the well-settled doctrine upon this subject. *Burton* v. *Pressly, Cheves Eq.* 1 ; *Costelo* v. *Cave & Bradley*, 2 *Hill* 528 ; *Adger & Co.* v. *Pringle*, 11 *S. C.* 527, and many other cases. The Circuit judge has found, in substance, that the pre-existing notes had not been paid. He has, therefore, gone back behind the note sued on and ordered an inquiry as to the items and the dates of the several debts included therein, holding that the directors who were acting at those various dates were liable, but subject to the plea of the statute of limitations. We have found but little testimony in the case directed to this point. The most that there is comes from the plaintiff, where he speaks of the large note as a consolidation. The rule seems to be that the intention must govern, the *onus probandi* resting upon the party affirming it. The defendants deny payment, and the testimony of the plaintiff, so far as it goes, is against it. There was no error, therefore, in this finding of the judge.

We do not think that the relation of the directors to the company was such as to warrant the application of the principles of law contended for by plaintiff's counsel, in cases of joint and

several notes, copartnerships, &c., where the admissions, acts and payments of one will bind the others and prevent the statute or give it a new starting point. In such cases the parties are so closely connected that they are regarded in some sense as agents, one of the other, and bound, therefore, by each other's acts and admissions. But here no such connection exists. There the parties are all in the same contract, entered into at the same time and upon the same consideration. Here the contracts are different, that of the company being upon notes given by them for goods sold or services rendered, and that of the directors upon a general agreement made when the terms of the act of 1869 were accepted as evidenced by the organization of their company under its provisions. There is no analogy between the two, and, therefore, not subject necessarily to the same principles of law.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.