DAVIS v. BLAND

(136 S. E., 800)

1. PRINCIPAL AND AGENT—ORIGINAL HOLDER OF BOND AND MORTGAGE, FORWARDING THEM TO ATTORNEY FOR COLLECTION UNDER BLANK ASSIGNMENT, HELD LIABLE FOR ATTORNEY'S FRAUD IN SUBSEQUENTLY SELLING THEM.—Where original holder of bond and mortgage secured papers from assignee and forwarded them to attorney with blank endorsement in response to attorney's request that papers be forwarded to bank to be taken up he thereby created such attorney his agent, and is therefore liable for attorney's fraud in subsequently selling bond and mortgage for full amount apparently due thereon.

2. PRINCIPAL AND AGENT—PRINCIPAL IS CIVILLY RESPONSIBLE FOR FRAUDULENT ACT OF AGENT DONE IN COURSE OF AGENCY.—Principal is civilly responsible for fraudulent act of his agent in course of agency and by virtue of authority of agent.

3. ESTOPPEL—ONE OF TWO INNOCENT PARTIES PLACING IT WITHIN POWER OF ANOTHER TO PERPETRATE WRONG MUST SUFFER THEREFOR.— If one of two innocent parties must suffer, it must be he who has placed it within the power of malefactor to perpetrate the wrong.

Before TOWNSEND, J., Sumter, December, 1925. Reversed and remanded for a new trial.

Action by C. M. Davis against R. J. Bland. Judgment for defendant, and plaintiff appeals.

The decree filed by the Circuit Judge and directed to be reported is as follows:

I find from the evidence that, in 1914, S. Oliver O'Bryan negotiated for Mrs. Hattie C. Wheeler a loan from defendant, secured by her nonnegotiable bond and mortgage in the sum of $1,000 payable to defendant, dated June 4, 1914, and due one year after date. Some time in 1920, O'Bryan, as agent for Mrs. Wheeler, notified defendant she was ready and desired to take up the papers, and asked that defendant send them with draft attached to a bank in Manning for collection. Thereupon defendant indorsed his name on the back of the bond and mortgage, and sent them

directly to O'Bryan, with instruction that he remit the money due to defendant, and leaving a blank space over his signature in which he, by implication, intended O'Bryan, as Mrs. Wheeler's agent, paying the debt secured, to write either a satisfaction or assignment of the papers. On the receipt of the papers, O'Bryan, acting for Mrs. Wheeler, remitted to defendant the money due thereon, but, instead of delivering the papers to Mrs. Wheeler, O'Bryan retained them several months, and then, without any authority from the defendant, sold and undertook to transfer the bond and mortgage to plaintiff in consideration of $1,000 paid him therefor. At the time of such purchase by plaintiff, he saw O'Bryan fill in the blank above defendant's signature an assignment of the bond and mortgage to him, and supposed that O'Bryan had authority so to do, and trusted O'Bryan in the matter. In 1924 plaintiff discovered that the debt had been paid by Mrs. Wheeler to defendant before the attempted transfer to plaintiff, and thereupon brought this action. I conclude that, when plaintiff found O'Bryan in possession of the bond and mortgage with the blank in form for assignment unfilled, he was put on inquiry as to O'Bryan's authority to fill the blank and transfer the papers, and that laches cannot be imputed to defendant in leaving the papers in this shape with O'Bryan pending the contemplated payment by Mrs. Wheeler, see *Sloan v. Brown*, 228 Pa., 495; 77 A., 821; 139 Am. St. Rep., 1019, citing Cook on Corporations, § 351; Mechem, Agency, 289. In order to affect defendant, the blank over his signature must have been filled in by O'Bryan in accordance with the authority given by defendant (*Duncan v. Hodges*, 4 McCord, 239), or while acting within the scope of his agency (*Mars v. Mars*. 27 S. C., 134; 3 S. E., 60). The agency of O'Bryan necessarily ceased when he collected the moneys due by Mrs. Wheeler and remitted them to defendant. 1 Elliott, Contracts, § 460. The defendant was no longer interested in

the papers and is not liable for the moneys which plaintiff paid to O'Bryan. It is therefore ordered, adjudged, and decreed that the complaint be and hereby is dismissed.

*Mr. J. J. Cantey,* for appellant, cites: *Assignor of bond and mortgage impliedly warrants genuineness and his own title:* 107 S. C., 35; 24 R. C. L., 476. *Maker of bond justified in making payment to holder of bond endorsed in blank:* 87 S. C., 194; 21 R. C. L., 43. *Where owner of bond endorses in blank and leaves it with another, who sells without authority, bona fide purchaser will be protected:* 113 S. C., 282; 21 R. C. L., 84. *Same; owner guilty of negligence:* 128 S. C., 420; 15 Col. App., 237; 63 Ill., 321; 58 Ind., 425 75 Pa. St., 18. *Where one of two innocent parties must suffer loss:* 67 S. C., 432; 10 R. C. L., 128. *Appellant entitled to judgment absolute:* 92 S. C., 362.

*Messrs. Epps & Levy,* for respondent, cite: *Defendant entitled to prove limited extent of authority of his agent:* 127 S. C., 213. *Appellate jurisdiction of Supreme Court in law cases:* Const. 1895, Art. 5, Sec. 4; Code Civ. Pro., 1922, Sec. 26.

January 17, 1927.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action at law for damages growing out of the following transactions:

On June 4, 1914, a Mrs. Wheeler executed a bond and mortgage to the defendant, Bland, for $1,000, due June, 4, 1915, with interest from date and attorney's fees. The bond was given for a loan of $1,000 from the defendant, Bland, which was negotiated through S. Oliver O'Bryan, at that time an attorney of the Manning bar. Bland remitted the money to O'Bryan, who closed the transaction with Mrs. Wheeler and forwarded the papers to Bland, after

having the mortgage recorded. The bond and mortgage were assigned, by Bland, to a Mrs. Tiller. The exact date of the assignment does not appear in the record, as the written assignment on the back of the bond is not dated; but we assume, from the testimony of Bland, that it was written a very short time after execution, as he states:

"When I got the Wheeler bond and mortgage, I assigned them to Mrs. E. E. Tiller."

They were delivered by him to Mrs. Tiller. The interest appears to have been paid regularly by Mrs. Wheeler; whether directly to Mrs. Tiller, to Bland as her agent, or to O'Bryan to be remitted, does not appear. On January 19, 1920, O'Bryan wrote to Bland that Mrs. Wheeler had sold the land covered by the mortgage; that the purchaser desired to pay off the mortgage. and requesting Bland to attach the bond and mortgage to a draft upon him (O'Bryan) for the amount that was then due, $1,000, with interest from June 4, 1919, and send them forward "right away," through the bank. Evidently the money had been, or would be, placed with O'Bryan to meet the draft, by Mrs. Wheeler or by the purchaser of the land. On the next day, January 20th, Bland wrote to P. M. Tiller, son of Mrs. Tiller, for the papers, that he might comply with O'Bryan's request. On the same day the son transmitted the papers to Bland, with a request that he reinvest the collection when made. On the 21st of January, Bland transmitted the papers to O'Bryan, stating in his letter of transmission:

"Sending it to you direct, instead of to the bank, and you can send me a check for the amount due."

On February 4th, Bland acknowledged receipt, from O'Bryan, of his check for $1,053.34, "in settlement of bond and mortgage of Hattie C. Wheeler." On the same day Bland remitted to the son of Mrs. Tiller "our check" for the amount received by him from O'Bryan, "principal and interest on the Hattie C. Wheeler mortgage."

It appears that, when the bond and mortgage were assigned and delivered by Bland to Mrs. Tiller, both bore the following assignment, signed by Bland and witnessed by E. M. De Lorme:

"For value received the within security and the debt thereby secured are assigned unto Mrs. E. E. Tiller,"
—and that when returned by her son to Bland, and when he transmitted them to O'Bryan, the assignment was still intact.

When the papers were returned by the son of Mrs. Tiller to Bland, they contained no indorsement of satisfaction, and, having been executed to Bland originally, he (as he states, "for the purpose of satisfying the bond and mortgage") indorsed his name across the back of the bond, below the assignment which he had made to Mrs. Tiller, leaving a blank space above his signature in which the satisfaction might be entered. He declares that, when he transmitted the papers to O'Bryan, he had not interfered with the assignment from his to Mrs. Tiller, and that, when O'Bryan received them, the assignment was intact. Instead of filling the blank space above the signature of Bland with the satisfaction, as the latter intended that he should do, and delivering the satisfied bond and mortgage to Mrs. Wheeler, or to the purchaser of the land, O'Bryan retained the papers for several months.

On June 6, 1920, O'Bryan filled in the space above Bland's signature with an assignment of the bond and mortgage to the plaintiff, Davis, and received from him a check, payable to himself, for the full amount apparently due at that time upon the bond. For the years thereafter, O'Bryan paid to Davis regularly the interest upon the bond, as if the assignment had been *bona fide* and the payments were being made by Mrs. Wheeler. Thereafter it was ascertained that Mrs. Wheeler had paid the mortgage off in February, 1920, and that the assignment which

O'Bryan had filled in, to Davis, above the signature · of Bland, was a fraud. The plaintiff then brought this action against Bland to recover the amount which he had paid to O'Bryan, upon the ground that Bland, in indorsing the bond in the manner described, had enabled O'Bryan to perpetrate the fraud upon him.

The bond, as offered in evidence in this case, shows the assignment from Bland to Mrs. Tiller canceled; evidently the work of O'Bryan. It is not clear whether or not the plaintiff knew of that cancellation by O'Bryan. He testified that "I noticed the assignment of R. J. Bland on the back thereof"; possibly referring to the blank indorsement. He further says:

"I saw him (O'Bryan) strike out the old assignment; I am not sure of seeing him strike it out, but I know it was struck out."

There is no finding by the Circuit Judge upon this issue of fact, and it is beyond our power to resolve it.

The case, an action at law for damages, was heard by consent by the Circuit Judge, without a jury. He took the testimony in open Court and filed a decree in favor of the defendant. (Let it be reported.) From the judgment entered thereon the plaintiff has appealed upon exceptions which fairly raise the matters hereinafter considered.

The issue involved in this case is not one between Mrs. Tiller, the owner of the bond and mortgage at the time they were transmitted by her to Bland and by him to O'Bryan, and the mortgagor, who paid the money to O'Bryan which reached the proper hands by remittance from O'Bryan to Bland and by him to Mrs. Tiller; it is between Bland, who indorsed the bond in blank, when he was without authority to do so, and transmitted it to O'Bryan, with instructions to collect it and enter the satisfaction in the blank above his signature, and the plaintiff, who paid his money upon

the faith and confidence of the assignment to him filled in by O'Bryan.

The conduct of Bland throughout the transaction is without the semblance of wrongdoing. His reputation and character, known to the Court, is above reproach. No one connected with the original transaction has lost a dollar by his handling. Mrs. Wheeler, the mortgagor, is protected by her payment to O'Bryan. Bland is protected by his remittance to Mrs. Tiller. If he has become liable to any one, it is to Davis, the purchaser of the bond and mortgage from O'Bryan after it had been paid; a very hard case, as all of these cases involving the interests of apparently innocent parties are, where one of them stands to lose, while the real culprit escapes with the bag. The respective situations of the contending, apparently innocent parties, is therefore to be analyzed.

When, in consequence of the notification by O'Bryan that the purchaser from Mrs. Wheeler was prepared to take up the mortgage, Bland notified Mrs. Tiller and received from her the bond and mortgage, he received the papers as they were when he delivered them to her, without evidence of satisfaction. Instead of securing this satisfaction from Mrs. Tiller, which would cause some delay, Bland signed his name, in the presence of a witness, on the back of the bond, below the assignment which he had executed to Mrs. Tiller, and forwarded the papers to O'Bryan. He states in his testimony:

That the original assignment from him to Mrs. Tiller was not canceled when he transmitted the papers to O'Bryan; that "my signature was put there for the purpose of satisfying the bond and mortgage"; that "I did not mark the papers paid, because there might be some hitch in the sale and I did not want the papers to come back with the satisfaction (on them)."

His alleged failure to cancel the original assignment

from him to Mrs. Tiller may be explained for the same reason. If, as he says, his purpose was that O'Bryan should fill in the space above his signature with a satisfaction of the bond, he necessarily intended that before this was done, and as essential to a satisfaction *by himself* O'Bryan *should cancel the original assignment;* for it is manifest that a satisfaction by him, with the original assignment from him to Mrs. Tiller intact, would not and could not be accepted by the mortgagor or the register of mesne conveyances as a satisfaction.

It is insisted that Davis was present and saw O'Bryan cancel the original assignment from Bland to Mrs. Tiller. Davis' testimony on this point, the only evidence relied upon by Bland to establish the fact, is not at all conclusive. He testified:

"I saw him (O'Bryan) strike out the old assignment; I *am not sure of seeing him strike it out,* but I know it was struck out."

As above stated, the Circuit Judge made no finding as to this, and we do not consider it an established fact in the case. But assuming that Davis did see O'Bryan cancel the original assignment from Bland to Mrs. Tiller before the assignment to him was completed by filling in the space above the witnessed indorsement of Bland, we do not consider this fact as material, for the inference is irresistible that, if O'Bryan had followed the direction of Bland to fill the space with a *satisfaction of the bond,* Bland intended that O'Bryan should do this very thing; otherwise, as stated, the satisfaction would not have been complete. If Bland authorized O'Bryan to mark the bond and mortgage satisfied, by filling in the space above his signature, as a principle of law he must be assumed to have authorized him to do that without which the satisfaction would have been worthless, cancel the original assignment.

In 31 Cyc., 1343, it is said:

"A special authority like a general authority confers by implication all powers necessary for or incident to its proper execution."

At page 1344:

"In the absence of proof that the principal has withheld such authority, it is a rule of law that every grant of power implies and carries with it incidental authority to use all necessary means and inducements properly to perform it."

In 21 R. C. L., 853:

"Being clothed with power to do a particular act, the agent will be deemed to have also whatever authority attaches to the doing of the act or is necessary to its performance."

It does not appear that Mrs. Tiller authorized Bland to mark the bond and mortgage satisfied, or to commit that duty to O'Bryan. He appears to have acted on his own initiative, for the purpose of avoiding the trouble and delay of returning the papers to her for her satisfaction, or forwarding to her a satisfaction piece to be executed and returned. He then forwarded the papers with his indorsement in blank to O'Bryan, and specifically states in his testimony: "My signature was put there for the purpose of satisfying the mortgage"—that is, that the satisfaction might be entered by O'Bryan in the blank space above it. Bland preferred for some reason, doubtless due to his supreme confidence in O'Bryan, not to follow the directions of O'Bryan that a draft upon him with the papers attaced be forwarded through the bank, but sent them directly to O'Bryan with the request that he remit check for the amount due. Unquestionably, if Bland had followed the instructions of O'Bryan, the bank would have been his agent to fill in the satisfaction, collect the money upon delivery of the satisfied mortgage, and remit the proceeds; and, if he had done so, the papers, when they reached O'Bryan, would have borne the filled-in satisfaction, and the possibility of his imposing upon Davis would have been averted.

Bland,. however, preferred to send the papers directly to O'Bryan to perform the same office that would have been undertaken by the bank if he had followed the course suggested by O'Bryan, and which ordinary prudence would have dictated.

We are compelled to consider Bland's action in the matter in comparison with what that of a man of ordinary prudence and care would have been under the circumstances. The natural course to have pursued would have been, upon notification by O'Bryan that the purchaser of the land was prepared to take up the mortgage, to have prepared a satisfaction piece to be executed by Mrs. Tiller with return of the papers, then draw a draft upon O'Bryan, and forward it, with the bond, mortgage, and satisfaction piece, through the bank for collection and delivery of all the papers to O'Bryan as the agent in that transaction for the mortgagor, Mrs. Wheeler. It would have been impossible then for O'Bryan to have perpetrated the fraud which has cost Davis more than $1,000. Instead of doing this, he disobeyed or declined to follow the course suggested by O'Bryan and sent the papers directly to O'Bryan, without a satisfaction piece, and with the authority not only to fill the blank space with a satisfaction, but to cancel the prior assignment to Mrs. Tiller, thus putting it absolutely within the power of O'Bryan to impose upon Davis, despite the recommendation of O'Bryan of a perfectly safe course.

It is plain, therefore, that in the matter O'Bryan was the agent of Bland to receive the papers, to cancel the original assignment, to enter satisfaction over his signature, to collect the money due, and to remit it to Bland. He was clothed with the apparent authority to treat with these papers in any way calculated to realize the money upon them. If a third person had approached O'Bryan with a proposition to buy the papers, unquestionably O'Bryan would have been

authorized, with the papers in his possession, indorsed in blank by Bland, to have filled in the blank with an assignment to such third person, collect the money and remit to Bland; and that is exactly what Davis was justified in assuming he had the right to do, when he was approached to buy them.

O'Bryan's act was, if not within the actual scope of his authority, clearly within the apparent scope, and for his fraud, he who put it in his power to commit it must be the responsible party.

His Honor, the Circuit Judge, has based his decree upon the following ground.

"That when plaintiff found O'Bryan in possession of the bond and mortgage, with the blank in form for assignment (that is, we interpolate, from Bland to Davis) unfilled, he was put on inquiry as to O'Bryan's authority to fill the blank (with an assignment to Davis), and transfer the papers. * * * In order to affect defendant, the blank over his signature must have been filled in by O'Bryan in accordance with the authority given by defendant, or while acting within the scope of his agency."

If the premises of the learned Circuit Judge are true, his conclusion is inevitable. It is conceded that O'Bryan did not act in accordance with the directions of Bland. He committed a fraud upon both Bland and Davis. Instead of filling out a satisfaction in the blank space, he filled out an assignment from Bland to Davis.

The question is not whether O'Bryan filled in the blank space over the signature of Bland in accordance with the authority given him by Bland (it is conceded that he did not), or whether he did so while acting within the scope of his authority (it is also conceded that he did not), but the question is whether O'Bryan, as the agent of Bland, acted within the *apparent* scope of his authority, and was placed by Bland in a position which enabled him to per-

petrate a fraud upon Davis, without fault on the part of Davis.

As far back as the case of *Reynolds v. Witte,* 13 S. C., 5; 36 Am. Rep., 678, it is held that a principal is civilly responsible for the fraudulent act of his agent where the act is done in the course of the agency and by virtue of the authority as agent.

And in *Goble v. Exp. Co.,* 124 S. C., 19; 116 S. E., 900 the Court said:

"A principal is liable for the engagements, agreements, representations, and promises of the agent made either within the actual or within the apparent scope of his authority." *Swift v. Callaham,* 133 S. C., 353, at page 363; 131 S. E., 146.

The plaintiff, Davis, appears to have been absolutely without fault in the transaction, and it has been so frequently stated by the Court that, if one of two parties must suffer, it must be he who has placed it within the power of the malefactor to perpetrate the wrong, that authorities are deemed unnecessary to be cited.

In the absence of a motion by the plaintiff for a directed verdict or for judgment in his favor, the logical result of our conclusions is that there must be a new trial.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

MESSRS. JUSTICES WATTS, BLEASE, and STABLER, concur.