July 10, 1930. The opinion of the Court was delivered by
This is an action to foreclose a mortgage of real estate executed by the defendant Owens to E.T. Hughes, now deceased, securing a note for $3,000, dated August 25, 1919, and due one year after date with interest after maturity at 8 per cent. and attorney's fees.
The plaintiff claims the ownership of the note and mortgage by assignment from the mortgagee Hughes, and the defendant H. Stacy Smith makes the same claim on behalf of his testator N.P. Smith, of whose will he is executor.
The contest, as will appear, is between two innocent parties, one of whom must suffer by reason of the fraudulent conduct of the original mortgagee Hughes.
The admitted facts of the case are these:
On August 25, 1919, the defendant Owens made and delivered to E.T. Hughes his promissory note in writing, dated on that day, whereby for value received he promised to pay to the order of E.T. Hughes on August 25, 1920, the sum *Page 165 
of $3,000, with interest after maturity at the rate of 8 per cent. per annum, payable annually, and if not so paid each year's interest to be added to the principal and bear interest at the same rate; and on same day in order to secure this note, he executed to E.T. Hughes the mortgage on a tract of land described in the complaint. The mortgage was promptly recorded on the day of its execution, and on the following day the note and mortgage were indorsed and delivered by Hughes to the plaintiff Fannie B. Hahn for the full value thereof. The mortgage was indorsed in blank by Hughes and the note was indorsed in blank by Hughes and in the firm name of Mullins Hughes, a firm of lawyers of which Hughes was a member; the indorsement was written by Hughes. Shortly thereafter the interest from date to maturity of the note, $240, was remitted by Hughes to Fannie B. Hahn, the assignee. She lived in Wilmington, N.C., and L.M. Bunting was employed by her in a clerical capacity. Her nephew, Hariss Newman, Esq., an attorney-at-law, was her personal attorney. Both Bunting and Newman also resided in Wilmington. The mortgage remained in the hands of either Bunting or Newman for the plaintiff until it was transmitted by Bunting to Hughes for collection on December 7, 1921. The note remained in the hands of either Bunting or Newman until it was sent to L.D. Lide, Esq., after the death of Hughes for the purpose of instituting the present action. No payments were made on the note and mortgage in question except the payment of interest as above stated.
On December 7, 1921, Bunting mailed the mortgage together with four other mortgages to Hughes as attorney, for collection. Although the mortgage was indorsed in blank by the mortgagee Hughes, the indorsement remained in blank when the mortgage was transmitted by Bunting to Hughes.
Later, while Hughes as attorney was in possession of the mortgage, indorsed by him in blank, Hughes conceived the *Page 166 
fraudulent scheme which he developed as follows: On May 2, 1922, he made a note to N.P. Smith, the testator of the defendant H. Stacy Smith, for $2,000, due July 2, 1922, with interest from date and after maturity at the rate of 8 per cent. per annum, payable annually in advance, and if not so paid each year's interest to be added to the principal and bear interest at the same rate. The consideration of this note was the sum of $2,000, which was paid by Smith to Hughes at the time the note was executed. Hughes delivered to Smith as collateral security to this note the mortgage which he had assigned to Fannie B. Hahn and which he at that time held as attorney for collection, still bearing his blank indorsement. At the same time he had the defendant Owens to execute a note to him dated December 19, 1921, due January 15, 1922, for $3,480, with discount before and interest after maturity at the rate of 8 per cent. per annum, payable annually in advance, and if not so paid each year's interest to be added to the principal and bear interest at the same rate. On the lower left-hand corner of this note the word "Renewal" is written in the handwriting of Hughes.
The plaintiff had no knowledge of the transaction between Hughes and Smith until after the death of Hughes, and Smith had no knowledge of the previous assignment of the note and mortgage by Hughes to Fannie B. Hahn. Hughes died September 5, 1922, and after his death Newman, the Wilmington attorney of Fannie B. Hahn, came to Marion bringing with him a letter from Bunting to Henry Mullins, Esq. dated September 9, 1922, requesting him to turn over to Newman the five mortgages which had been transmitted to Hughes. All of them except the Owens mortgage were found in the desk of Hughes and were delivered by Mullins to Newman. Shortly thereafter the plaintiff learned for the first time of the transaction with Smith.
The present action was commenced on April 26, 1923; on February 9, 1924, his Honor, Judge Shipp, passed an *Page 167 
order referring all issues of law and fact to D.B. McIntyre, Probate Judge of Marion County. On February 28, 1924, reference was held and testimony taken; on August 7, 1926, he filed his report in favor of the plaintiff. The defendant Smith, executor, excepted to the report, and the matter was heard by his Honor, Judge Shipp, who passed an order dated April 9, 1929, confirming the report of the Probate Judge and decreeing foreclosure. From this decree the defendant Smith, executor, has appealed.
The report announces the familiar and uncontroverted proposition, upon which main reliance is placed, that the assignment of a note secured by a mortgage carries with it an assignment of the mortgage, but that the assignment of the mortgage alone does not carry with it an assignment of the note. It is not at all necessary to invoke that doctrine in the present case, for the reason that Hughes had already assigned both note and mortgage to the plaintiff; he had no title to them thereafter, and of course could legally assign nothing to the testator Smith. The question is not which of these two parties has the better legal title to the note and mortgage; there can be no controversy as to that; but rather whether the plaintiff by her conduct, and that of her attorney and agent, is estopped from denying the validity of the transfer to the testator Smith.
In the distressingly numerous cases which have lately come before this Court, involving loss to one or the other of the parties not actually participating in the fraud by reason of misplaced confidence in a third person, two principles of law have been repeated and firmly established: (1) That a principal is responsible for the fraud of his agent committed during the course of his agency; and (2) that where one of two parties, both innocent of actual participation in the fraud of a third person, must bear a loss occasioned thereby, it should fall upon the party whose active conduct or passive negligence has supplied the opportunity for such fraud. *Page 168 
The first principle was announced as far back as Reynoldsv. Witte, 13 S.C. 5, 36 Am. Rep., 678, where it was held that a principal is civilly responsible for the fraudulent act of his agent where the act was done in the course of the agency and by virtue of the authority as agent. See, also,Goble v. Exp. Co., 124 S.C. 19, 115 S.E., 900; Swift Co. v. Callaham, 133 S.C. 353, 131 S.E., 146. The doctrine of the Reynolds v. Witte case has been steadily approved in: Cobb v. R. Co., 37 S.C. 194, 15 S.E., 878;Rucker v. Smoke, 37 S.C. 377, 16 S.E., 40, 34 Am. St. Rep., 758; DuPont v. DuBos (Cir. Ct.), 52 S.C. 594 Append.;Hutchison v. Real Estate Co., 65 S.C. 45,43 S.E., 295; Mitchell v. Leech, 69 S.C. 413, 48 S.E., 290, 66 L.R.A. 723, 104 Am. St. Rep., 811; Williams v. Tolbert,76 S.C. 211, 56 S.E., 908; Stevenson v. Bethea, 79 S.C. 478,61 S.E., 99; Brown v. Telephone Co., 82 S.C. 173,63 S.E., 744; Huestess v. Ins. Co., 88 S.C. 31, 70 S.E., 403;Abbott v. Lumber Co., 93 S.C. 131, 76 S.E., 146; Robertsonv. Telegraph Co., 95 S.C. 356, 78 S.E., 977; Wellsv. Holman, 115 S.C. 443, 106 S.E., 224; Citizens' Bankv. Heyward, 135 S.C. 190, 133 S.E., 709; Davis v.Bland, 138 S.C. 354, 136 S.E., 300; Johnson v. R. Co.,142 S.C. 125, 140 S.E., 443; Neely v. Love, 144 S.C. 271,142 S.E., 623.
The second principle is sustained by all of the cases recently decided involving the question: Bacot v. Loan Trust Co., 132 S.C. 340, 127 S.E., 562; Morris v. Carlisle,128 S.C. 417 122 S.E., 511; Union Nat. Bank v. Cook,110 S.C. 99, 96 S.E., 484; Wilson v. Brabham, 126 S.C. 273,119 S.E., 829; Cogswell v. Cannady, 135 S.C. 365,133 S.E., 834; Land v. Reese, 136 S.C. 267,134 S.E., 252; Davis v. Bland, 138 S.C. 354, 136 S.E., 300; Milesv. Gadsden, 139 S.C. 52, 137 S.E., 204; Miles v. Felkel,139 S.C. 95, 137 S.E., 329; Mortgage Corp. v. Stewart,142 S.C. 375, 140 S.E., 804; Neely v. Love, 144 S.C. 271,142 S.E., 623; McFaddin v. Bland, 147 S.C. 27, *Page 169 144 S.E., 592; Ohlandt v. Craven, 146 S.C. 450,144 S.E., 162.
It is not suggested, even, that either the plaintiff or the testator, Smith, was at all implicated in the unblushing fraud that was perpetrated. The turning point in the case, however, is whether either, by active or passive negligence has facilitated its consummation.
And in this connection, consider the conduct of the plaintiff: She received possession of the papers the day after they were executed and delivered to Hughes; the note was due August 25, 1920; at that time she received from Hughes, paid by Owens, $240, the first year's interest; the next installment of interest, if she intended the past-due paper to continue, was due August 25, 1921; no demand upon Owens appears to have been made for either principal or interest; in fact, it does not appear that Owens was ever notified that she held the note and mortgage; it is incredible that Owens would have given a renewal note in December, 1921, payable to Hughes, 12 days after Hughes had received the mortgage for collection, if he had been notified by the plaintiff that she owned the note and the mortgage; it was not until December 7, 1921, sixteen months after the maturity of the note, before the mortgage was placed in the hands of Hughes, her agent and attorney, for collectionand then at the request of Hughes, as is shown by the letter of Bunting inclosing the mortgage; up to that time she appears to have been dealing solely with Hughes.
It appears to me conclusive that the plaintiff was negligent in not notifying Owens that she held the papers; that would have completely balked the scheme of Hughes to obtain from Owens a renewal note, payable to him, which he, knowing that an assignment of the mortgage would not carry an assignment of the note, proposed to substitute for the note which had not been delivered to him with the note.
The evidence is also conclusive of the plaintiff's negligence in transmitting to Hughes the mortgage which showed upon *Page 170 
its face that he was the mortgagee; and in not filling out the blank indorsement by inserting above his signature an assignment to herself. Without this, the mortgage being to Hughes as mortgagee showed upon its face that he was still the owner of it and entitled to assign it to Smith. The fact that it carried his indorsement was of no significance, as it indicated that he had at one time assigned it but had recovered it, something that is done every day. She manifestly was confiding in the wide reputation of Hughes as an attorney of first standing in energy, care, and scrupulous honesty.
By either course she could have prevented the consummation of the fraud upon Smith; putting it thus in the power of Hughes to palm off the mortgage upon Smith as his own property, as the paper showed upon its face, as collateral security to a personal note of his own.
We do not think that there can be a doubt but that her negligence was open door to the suggestion and consummation of the fraud. If she had not made it so easy for Hughes to perpetrate the fraud, it would never have been done.
Much credit for precaution is claimed in retaining the note while transmitting the mortgage to Hughes for collection. We do not understand such a proceeding; transmitting a mortgage to an attorney for collection with an urgent demand for the cash and retaining the note secured by the mortgage. Such a precaution would not only block the speedy collection desired, but indicated a distrust of Hughes which few lawyers of reputable standing would not have resented; if a distrust, why commit the much greater risk of transmitting the mortgage to the mortgagee who had assigned it in blank without filling up the blank indorsement? If the plaintiff distrusted Hughes, her negligence was all the greater in putting it in his immediate power to swindle herself, Owens, and Smith. *Page 171 
But it is insisted that the negligence of Smith was greater than that of the plaintiff, and that he, and not she, should bear the loss. Smith's negligence is said to have consisted in not demanding a production of the original note; and that the alleged renewal note was for a greater amount than was then due upon the original note; nothing else that we gather from the report or from the argument of respondent's counsel.
If the note which Hughes assigned to Smith as collateral was in fact a renewal of the original note given by Owens, it was but natural for Smith to assume that the original note had been surrendered to Owens when the renewal note was executed. Smith was dealing, as was the plaintiff, with a reputable attorney whose character at that time was above reproach; he had the right, as Hughes had possession of the mortgage payable to himself, to assume, as the note stated upon its face, that it was a renewal of the original note. If, as a matter of fact, as the referee held, it was not a renewal, there was nothing to show that it was not and everything to show that it was. The fact that it may not have been is of no consequence; the pregnant fact is that Smith was led to believe that it was a renewal by the representations of the agent and attorney of the plaintiff, who is responsible therefor.
The referee held: "In fact, the evidence does not show that this note was a renewal." We do not think that it shows anything else. Owens owed the debt of $3,000, with 8 per cent interest from August 25, 1921, to December 19, 1924, and the interest upon $240 practically $326, a total of $3,326; he gave a new note for $3,480, $154 more than he should have given. Smith was lending $2,000 to Hughes. If there was a mistake in the amount of the new note, it did not affect the security of $3,326 for a loan of $2,000; that was a matter of adjustment between Hughes and Owens. We do not think that it was incumbent upon Smith to verify the calculation or sufficient to notify him that it was not *Page 172 
what it purported to be, a renewal of the original not. The evidence shows that the original debt was all that Owens owed Hughes and that nothing had been paid except the interest for one year.
Besides, the fact that it was a renewal articulates perfectly with the scheme of Hughes. He did not have possession of the original note and he had to have a note which represented it in order to work the securities off on Smith. There is not a particle of evidence tending to show that that note could have represented a new obligation of Owens to Hughes. It is strange that if it did and was due in January, 1922, that we hear of no effort on the part of Hughes to collect it. As it was a renewal note, we do not think it is open to question that the mortgage continued to operate as a security for it. Mars v. Conner, 9 S.C. 70; Burton v.Pressly, Cheves, Eq., 1.
In Griffin v. Addison, 3 S.C. 105, the Court said: "The effect of taking a new obligation for one secured by a mortgage as affecting the lien of the mortgage, was settled inBurton v. Pressly (Chev. Eq., 1,) where it was held that if a new obligation is taken intended as payment of one secured by mortgage, the security is at an end; but that if the new obligation was intended as a substitute for the secured obligation, the mortgage remains valid and effectual."
In Gibbes v. R. Co., 13 S.C. 228, the Court said: "To give one security for another of equal dignity, without the intention of discharging of the debt, is not payment, but substitution, and in such case it is well settled that a lien, such as a mortgage previously existing, is not discharged, but remains and still secures the debt in the new form."
In Ewbank v. Ewbank, 64 S.C. 434, 42 S.E., 194, 195, the Court said: "Such new promise is not substantially different from a renewal or substantial obligation, which would not affect the lien of a mortgage given to secure the original debt. No mere change in form of the debt secured by mortgage will impair the lien of the mortgage." *Page 173 
See also Johnson v. Clarke, 15 S.C. 72; Murray v. Witte,16 S.C. 504; Sullivan v. Mfg. Co., 20 S.C. 79; Groce v.Jenkins, 28 S.C. 172, 5 S.E., 352; Lyles v. Lyles, 71 S.C. 391,51 S.E., 113.
We wish to direct especial and particular attention to the case of Davis v. Bland, 138 S.C. 354, 136 S.E., 300, which appears to us to be conclusive of this appeal:
In that case Bland, in 1914, negotiated a loan to Mrs. Wheeler, through O'Bryan, a lawyer at Manning, evidenced by her note for $1,000, due one year after date secured by a mortgage of real estate; Bland remitted the money to O'Bryan, who closed the transaction and forwarded the papers to Bland after having the mortgage recorded; Bland assigned the note and mortgage to Mrs. Tiller; both papers were indorsed by a formal assignment by Bland to Mrs. Tiller and were delivered to her a short time after Bland received them from O'Bryan; the interest was paid regularly by Mrs. Tiller; in January, 1920, Mrs. Wheeler desired to pay off the mortgage and so notified Bland; Bland procured the papers from Mrs. Tiller; he did not have her to execute a satisfaction of the mortgage, but wrote his own name below the assignment which he had executed to Mrs. Tiller and forwarded the papers to O'Bryan expecting him to fill out the satisfaction above his (Bland's) signature which was duly witnessed. O'Bryan collected the amount of the mortgage and remitted it to Bland and he to Mrs. Tiller; instead of filling out the satisfaction as Bland expected him to do, O'Bryan wrote an assignment of the note and mortgage above the signature of Bland and delivered them to Davis, who paid the money remitted to Bland. Davis then brought suit against Bland for the amount which he had paid to O'Bryan for a worthless paper and was allowed a recovery upon the ground that Bland in not having the mortgage satisfied by Mrs. Tiller and leaving his indorsement unfilled had put it in the power of O'Bryan, his agent, to perpetrate the fraud upon Davis. *Page 174 
For these reasons the circuit decree should be modified by allowing the defendant Smith, executor, priority over the plaintiff in the proceeds of the foreclosure sale to the extent of the note given by Hughes to the testator N.P. Smith; and it is so ordered.
MR. JUSTICE BLEASE concurs.
MR. JUSTICE STABLER concurs in result.